## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MANUEL DELGADO,** | ) **No.  06 C 3757** |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Judge Robert E. Dow** |
| **Cook County Deputy Sheriffs WILLIE MAK, #4255,** | ) |
| **CALVIN FIELDS, #3444, MARTIN LOWERY #1825, Cook** | ) |
| **County Sheriff MICHAEL SHEAHAN, and the COUNTY of** | ) |
| **COOK,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF DELGADO'S RESPONSE TO
## DEFENDANTS' MOTIONS *IN LIMINE*

Plaintiff Manuel Delgado, by and through his attorneys Joey L. Mogul and Ben H. Elson, responds to Defendants' motions *in limine* as follows:

**I.        Defendants' Motion *in Limine* #1 - IAD Investigation**

Plaintiff Delgado agrees that the Cook County Sheriff's Internal Affairs Division (IAD) recommendation and underlying rationale (i.e. finding) should be barred from the trial.  *See* Plaintiff Delgado's Motion *In Limine* A (The Findings of the Cook County Sheriff's Office Into the Allegation of Mr. Delgado's Federal Complaint Should Be Barred as Well as Testimony the Defendants Seek to Elicit from Investigator Hull).

Plaintiff Delgado also agrees that all parties should be barred from seeking the admission of evidence or making any reference to the fact that IAD conducted an investigation into the incident that is the subject of Plaintiff Delgado's lawsuit.  *See* DE 90, Defs' Motions *In Limine*, p. 3.  ("Plaintiff should not be allowed to introduce the fact that an investigation occurred to imply that the Defendant Officers were engaged in wrongdoing.")  If the IAD investigation is presented to the jury, it may cause them to wrongly conclude that the Defendant Officers were exonerated or there was insufficient evidence to prove Plaintiff Delgado's allegations.  Thus, under Fed. R. Evid. 403, any probative value of informing the jury that IAD conducted an

1

investigation would be substantially outweighed by the prejudicial effect.[1]

However, Plaintiff Delgado continues to seek to use the prior statements that the individual Defendant Officers gave to IAD during its investigation regarding the underlying incident as impeachment of the individual Defendant Officers at trial. *See* Plaintiff Delgado's Exhibits 38, 40, and 42. These statements are admissible under Fed. R. Evid. 801(d)(2) as admissions by a party-opponent. Plaintiff Delgado, however, will not identify these statements before the jury as statements made during the course of the IAD investigation. Rather, Plaintiff Delgado will only reference these statements as prior statements made by the individual Defendant Officers with respect to this incident.[2]

In sum, Plaintiff Delgado does not object to this motion *in limine* and respectfully requests this Court grant Plaintiff Delgado's motion *in limine* A on the same topic.

## II.      Defendants' Motion *In Limine* #2 - Permanency of Injury

Without recitation to a single case or rule of civil procedure or evidence, the Defendants are moving to bar any evidence, testimony or reference that Plaintiff Delgado "suffered any permanent injury or will have future medical problems or need future medical treatment." (DE 90, Defs' Motion *In Limine*, p. 4). Specifically, Defendants appear to be seeking to bar any evidence that establishes that Plaintiff Delgado's left bicep tendon was ruptured[3] and that Mr.

---

[1]Towards that end, Plaintiff agrees to withdraw the notice of the allegations, administrative proceeding rights and waiver of counsel documents listed for use as impeachment evidence only. *See* Pre-Trial Order, Schedule C, Plaintiff Delgado's Exhibits 37, 39, and 41.

[2]Plaintiff  Delgado would only seek to call Cook County Investigator Hull from the IAD to testify that he witnessed these statements made by the Defendant Officers if the Defendant Officers refuse to acknowledge they made these statements. *See* Plaintiff Delgado's Motion *In Limine* A (The Findings of the Cook County Sheriff's Office Into the Allegation of Mr. Delgado's Federal Complaint Should Be Barred as Well as Testimony the Defendants Seek to Elicit from Investigator Hull).

[3]While Defendants characterize Mr. Delgado's injury as "a tear in the bicep" (DE 90, Defs' Motion *In Limine*, p. 8), both Plaintiff's and Defendants' experts agree that Mr. Delgado's left bicep tendon was completely ruptured. (Exhibit A, Plaintiff's Expert Opinion of Dr. Bennet, p.1; Exhibit B, Defendants' Expert Opinion of Mr. Draganich, Opinion 2, p.2). According to Defendants' expert, Mr. Delgado "suffered a complete rupture of the long head of [sic] tendon of his biceps [sic] muscle," and there is no dispute that Mr. Delgado's bicep is completely ruptured.

Delgado will need further medical treatment to redress the pain he continues to suffer as a result of the Defendant Officers' admitted use of force.

Pursuant to Fed. R. Evid. 702, Plaintiff is entitled to call any witnesses with scientific or specialized knowledge to assist the jury to determine a fact in issue. Here, Plaintiff seeks to call several medical treaters to testify to the injuries Mr. Delgado suffered during this incident, the treatment he received to redress these injuries, as well as the fact that he suffered a permanent injury from this incident. Plaintiff also seeks to have these treaters testify that he continues to suffer pain to this day and will need further medical treatment in the future to remedy these injuries.

Specifically, Plaintiff Delgado will call Dr. Adam Bennett, a physician from Northwestern Orthopaedic Institute who treated Mr. Delgado's injuries. Dr. Bennett will testify that Mr. Delgado suffered a complete rupture of his left bicep tendon, that his injury is a permanent defect and that the injury requires surgery to be rectified. (Exhibit A, p. 1; Exhibit D, Dr. Bennett's Deposition Testimony, p. 75). Contrary to the vague suggestion offered by the Defendants, Dr. Bennett is more than qualified under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to testify as to the diagnosis of Mr. Delgado's injuries, the treatment he has provided Mr. Delgado, and the future treatment Mr. Delgado must receive to remedy his injuries. Dr. Bennett is a licensed medical doctor who specializes in treating people with musculoskeletal injuries and has previously treated over 20 people with ruptured bicep tendons. (*See* Exhibit E, Dr. Bennett's curriculum vitae and Exhibit D, p. 68, l. 16 - p. 71, l. 15). Therefore, contrary to the Defendants' suggestion, Plaintiff Delgado has competent medical testimony to offer which demonstrates that Mr. Delgado suffered a permanent medical injury and that this injury requires surgery to repair.

Plaintiff Delgado may also call Dr. Scott Spencer as treating physician and expert to testify to the injuries Plaintiff Delgado suffered, the treatment he received and the possible need for further treatment to relieve the pain and tension Mr. Delgado continues to suffer as a result of this incident. Contrary to Defendants' suggestion, as board certified chiropractor, Dr. Spencer is

(Exhibit B and Exhibit C, Draganich's Deposition, p. 119, l. 20 - p. 120, l. 1).

qualified to testify to the pain and injuries Dr. Delgado suffered, the treatment he received to relieve his pain and the potential need for future treatment under Fed. R. Evid. 702 and *Daubert*. (*See* Exhibit O, Dr. Spencer's curriculum vitae and Exhibit I, Dr. Spencer's expert opinion).

Defendants' also suggest that Plaintiff Delgado should be barred from presenting any evidence that his left bicep tendon was ruptured because he first received treatment from Dr. Bennett almost two years after this incident, and he received treatment from Dr. Spencer four months after this incident.  (DE 90, Defs' Motion *In Limine*, pp. 3-4).  While it is true that due to various reasons, Mr. Delgado did not have a MRI conducted on his left upper arm until 2007 to determine with absolute certainty that his left bicep tendon was fully ruptured, symptoms of the ruptured bicep tendon appeared immediately after this incident and previous medical treaters diagnosed that he suffered a torn/ruptured left bicep tendon.  Specifically:

- On October 6, 2004, the day of this incident, while being treated in the emergency room at St. Anthony's Hospital, treaters noticed that Mr. Delgado had several abrasions to his arms.  (Exhibit F, Medical Records from St. Anthony's Hospital, p. 5).

- On October 8, 2004, while Mr. Delgado was still being treated at St. Anthony's Hospital, both a nurse and a doctor noted swelling in Mr. Delgado's left upper arm, which is the area where his left bicep tendon was ruptured.  (Exhibit F, p. 32, 71).

- On October 11, 2004, Dr. Akere, Mr. Delgado's treating physician and a physical therapist, noted swelling and a soft palpable mass of tissue in Mr. Delgado's left upper arm.  (Exhibit F, pp. 32-35).  Further, Dr. Akere prescribed that Mr. Delgado obtain a ct-scan to further investigate the injury.  (Id. at 35).

- On December 7, 2004, while receiving physical therapy for his injuries from this incident as prescribed by Dr. Akere, Jennifer Martello, a physical therapist, reported that Mr. Delgado had an abnormal "popeye" looking muscle in his left bicep.  (Exhibit G, Record from Athletico).  According to Defendants' expert, Mr. Draganich, the popeye looking muscle is a defect that supports the conclusion that Mr. Delgado suffered a complete rupture of the long head tendon of his bicep. (Exhibit C, Draganich Deposition, p. 130, l. 15 - p. 131, l. 16).

- On February 18, 2005, Dr. Wilkin noted that Mr. Delgado had a torn proximal head, i.e., a tear in his left bicep.  (Exhibit H).

- In February of 2005, Mr. Delgado sought treatment from Dr. Scott Spencer, a

licensed chiropractor, to relieve pain from his injuries.  Dr. Spencer noted that Mr. Delgado's left bicep tendon was torn and that there was a visible lump in Mr. Delgado's left arm.  (Exhibit I, Expert Opinion of Dr. Scott Spencer, p. 2).

•       On November 20, 2006, Dr. Slobodan Vucicevic noted that Mr. Delgado's left bicep tendon was ruptured and that this injury was present for very long time. (Exhibit J, p. 1).

The documentation of this injury in the medical records clearly shows that Mr. Delgado's left bicep tendon was ruptured during the underlying incident.  Even the Defendants' expert, Mr. Draganich, has conceded that it is likely that Mr. Delgado's bicep tendon was not just torn, but completely ruptured at the time of the incident.[4]  While evidence that Mr. Delgado's injury was not diagnosed *via* a MRI in 2007 may arguably go to the weight the jury can give to Mr. Delgado's injury, it does not serve as a bar to its admission.

Defendants also may be arguing that Plaintiff has no competent evidence to offer as to the permanency of Mr. Delgado's injury to his left bicep and the need for surgery to repair this injury because, according to the Defendants, Dr. Bennett was only identified as a possible rebuttal expert.  (*See* Final Pre-Trial Order, Schedule D, Plaintiff's Witness List).  To clarify, Dr. Bennett was initially identified as an expert who would be called to testify as a treating physician on May 29, 2007, pursuant to Fed. R. Civ. P. 26(a)(2)(A).  (*See* Exhibit K, letter dated May 29, 2007).  It was Plaintiff Delgado's intention at that time to call Dr. Bennett as a treating physician to testify to Plaintiff Delgado's permanent injuries, the treatment he received and the need for additional treatment, including possible surgery to his left bicep tendon.  There is no doubt that Dr. Bennett was timely identified as a treating physician.

Subsequently, Plaintiff Delgado timely identified Dr. Bennett as a possible expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) who would provide additional testimony with respect to

--------

[4]Mr. Draganich originally opined that Mr. Delgado's left bicep was not ruptured but only torn during this incident, and that the tendon was completely ruptured sometime at the hospital. (*See* Exhibit B, Mr. Draganich's Opinions Nos. 3 and 5).  After confronting Mr. Draganich with documentation of the injury to Mr. Delgado's left bicep tendon shortly after his admission at the hospital, Mr. Draganich conceded that he no longer could stand by his opinions and testify with any certainty that the complete rupture of the bicep tendon did not in fact occur during the underlying incident.  (*See* Exhibit C, Draganich Deposition, p. 145, l. 5 - p. 156, l. 6).

the causation of Mr. Delgado's injuries. (*See* Exhibit M, letter dated June 29, 2007; Exhibit N, letter dated July 2, 2007, and Exhibit O, Minute Order dated May 31, 2007 stating that Plaintiff Delgado had until June 29, 2007, to identify his experts).  When Plaintiff's counsel identified Dr. Bennett as a Rule 26(a)(2)(B) expert witness, she informed defense counsel that it may not be necessary to call Dr. Bennett as a causation expert depending on the testimony of Defendants' expert witness, Mr. Draganich, who had yet to be deposed.  Plaintiff's counsel seriously believed that in light of the medical literature and opinions offered by Mr. Draganich, Plaintiff would not need to call Dr. Bennett as a 26(a)(2)(B) witness and therefore, Plaintiff and Defense counsel may not have had to go through the considerable time and expense of conducting his deposition, or at least a full deposition covering issues of causation.  However, after conducting Mr. Draganich's deposition and learning that Defense counsel intended to continue to seek to call Mr. Draganich as a witness, Plaintiff's counsel determined that Dr. Bennett was a necessary 26(a)(2)(B) witness.

Defendants are now arguing that Plaintiff has no right to call Dr. Bennett in his case in chief because Plaintiff's counsel suggested he may be called as a rebuttal Rule 26(a)(2)(B) witness with respect to issues of causation.  However, Plaintiff's counsel never withdrew the identification of Dr. Bennett as a treating physician as previously identified in May of 2007.  Thus, Plaintiff Delgado had a right to identify and call Dr. Bennett as his treating physician to testify to the diagnosis of his injury, the treatment he received and the fact that surgery is needed to repair his left bicep tendon when he identified him as a treating physician under Rule 26(a)(2)(A).  *See Musser v. Gentiva Health Srvcs.,* 356 F.3d 751, 757-58 (7th Cir. 2004).[5]

---

[5]As a treating physician, Plaintiff Delgado did not need to identify Dr. Bennett as a 26(a)(2)(B) witness with accompanying expert report to testify with respect to Plaintiff's diagnosis of injuries, treatment, prognosis of future treatment or even as to causation of the injuries.  *See Ridings v. Riverside Med. Ctr.*, 2006 U.S. Dist. LEXIS 22997 at **3-5 (C.D. Ill. 2006) (holding that "a treating physician may offer opinion testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26(a)(2)(B) report"); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 241-242 (C.D. Ill. 2002) ("In this case, the Court will follow the majority rule and finds that McCloughan's treating physicians may offer opinion testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26(a)(2)(B) report."); *Dereak v. Don Mattox Trucking, LLC*, 2007 U.S. Dist. LEXIS 80188 at **19-20 (C.D. Ill. 2007) ("[T]he Court concludes that Plaintiffs did not violate Rule 26(a)(2)(B) by failing to

Plaintiff Delgado also seeks to have Dr. Bennett testify, in his case in chief, about the causes of Mr. Delgado's injuries.  Defendants can cite to no evidence to suggest that they are in any way prejudiced by Dr. Bennett's opinions as to the causation of Mr. Delgado's injuries because Plaintiff Delgado identified that he may be called a rebuttal causation witness.  In this instance, Dr. Bennett's opinion was timely tendered pursuant to expert discovery deadlines. Further, Defendants had Dr. Bennett's opinion prior to their expert's deposition, and their expert in fact relied on Dr. Bennett's opinion when he testified.  Since Defendants will suffer no prejudice by having Dr. Bennett testify to all the opinions he has to offer with respect to diagnosis, treatment, prognosis and causation, Plaintiff should be able to call Dr. Bennett only one time in his case in chief.  It would be a waste of time for Dr. Bennett to be recalled in rebuttal to testify as to the causation of his injuries when Plaintiff Delgado properly identified and has the right call him to testify in his case in chief as a treating physician.

Therefore, Defendants motion *in limine* seeking to bar any evidence or testimony relating to the permanency of Plaintiff Delgado's injuries or the need for future treatment should be denied in its entirety.

### III.   Defendants' Motion *In Limine #3* - Indemnification By the County

Defendants seek to bar any evidence or instruction with respect to the fact that under Illinois state law, 745 ILCS 10/9-102, the County of Cook is responsible for indemnifying any compensatory damage award Plaintiff Delgado may receive against the individual Defendant Officers.  The general rule is that evidence of or reference to a party's right of indemnification is irrelevant and prejudicial on the issues of a party's liability.  *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998).  However, where an individual defendant attempts to portray himself as financially strained and unable to pay a compensatory or punitive damage award, the plaintiff is entitled to introduce evidence that the individual defendant was indemnified by the relevant municipality for compensatory damages.  *See id*; *see also Galvan v. Norberg*, 2006 U.S. Dist.

---

provide witness reports for the treating physicians."); *Osterhouse v. Grover*, 2006 U.S. Dist. LEXIS 30904 at **10-11 (S.D. Ill. 2006) ("This Court will not find, however, that the plaintiffs must provide Rule 26(a)(2)(B) reports for these treating physicians as they are not 'retained or specially employed.'").

LEXIS 32386,*7-8 (N.D. Ill. 2006) ("if defendants themselves inject the issue of their claimed inability or limited ability to pay an award, evidence of their right to indemnification by the City will become relevant.").  In this case, Plaintiff Delgado is seeking both compensatory and punitive damages awards against the individual Defendants.  If the Defendants seek to introduce evidence of the individual Defendant Officers' inability to pay damage awards, Plaintiff Delgado requests that the jury be instructed that the County of Cook is responsible for paying any compensatory damage award.  Only evidence that is clearly inadmissable for any purpose should be excluded pursuant to a motion *in limine. Tzoumis v. Tempel Steel Company,* 168 F.Supp.2d 871, 872 (N.D.Ill. 2001).

Therefore, Plaintiff Delgado requests that Defendants motion *in limine* be denied or reserved depending on the evidence introduced by the Defendants at trial.

**IV.    Defendants' Motion *In Limine #4 -*  Motion to Exclude Witnesses**

Plaintiff Delgado agrees to this motion.

**V.    Defendants' Motion *In Limine #5* - Prior Disciplinary Records**

Plaintiff Delgado objects to the extent that certain evidence is admissible for impeachment and under Fed. R. Evid. 404(b).  *See Okai v. Verfurth*, 275 F.3d 606 (7th Cir. 2001); *Treece v. Hoschstetler*, 213 F.3d 360, 363 (7th Cir. 2000); *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993); *see also Edwards v. Thomas*, 31 F.Supp.2d 1069 (N.D. Ill. Jan. 7, 1999); *Lepianka v. Emmett,* 03 C 2991 (J. Nolan, March 25, 2004) ("disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi").  Here, Plaintiff may seek to introduce past disciplinary records to demonstrate that the Defendant Officers have a motive to lie and cover up their excessive force and false arrest of Plaintiff Delgado.  In light of prior disciplinary complaints, the Defendant Officers were aware that such conduct could potentially lead to discipline or termination from the Sheriff's Department at the time of this incident.

Therefore, Plaintiff Delgado requests that Defendants' motion *in limine* be denied or reserved depending on the evidence introduced by the Defendants at trial.

**VI.    Defendants' Motion *In Limine #6* - Other Instances of Excessive Force**

Plaintiff Delgado agrees to this motion only to the extent that is seeks to limit any

references, testimony or evidence of other instances of excessive force cited or portrayed in the media.

## VII.   Defendants' Motion *In Limine* #7 - Evidence of Prior Conviction

The only party or witness to this lawsuit who has a prior conviction that Plaintiff Delgado is aware of is Defendant Lowery.  Defendant Lowery previously pled guilty to charges of unlawful use of a weapon and criminal damage to property in 1987 when he allegedly shot a citizen's car several times with his handgun.  Plaintiff agrees not to introduce or reference these misdemeanor charges.

## VIII.   Defendants' Motion *In Limine* #8 - Administrative Proceeding Rights

Plaintiff Delgado agrees to this motion.  Please see Plaintiff Delgado's response to Defendants first motion *in limine*, *supra.*

## IX.   Defendants' Motion *In Limine* #9 - Evidence of General Orders of the Sheriff

Defendants' argument that violations of the General Orders of the Sheriff are necessarily irrelevant to any issue at trial is unavailing.  Defendants are obviously correct insofar as violations of general orders do not equal proof of a constitutional violation.  But that is not the same thing as a conclusion that disregard of the Department's rules is irrelevant to any of the issues in dispute here.  Courts have consistently recognized that violations of general orders or rules are relevant to other issues in the case, and have thus denied this same motion *in limine*. *See Galvan v. Norberg*, 2006 U.S. Dist. LEXIS 32386 at *6 (N.D. Ill. 2006) ("Galvan is certainly correct in urging the relevance of defendants' claimed violations of City's Police Department's General Orders, Rules and Regulations.  Although any such asserted violations do not as such equate to a constitutional violation, they may bear, for example, on [other issues at trial]"; *Charles v. Cotter*, 867 F. Supp. 648, 664 (N.D. Ill. 1994) ("Because the court finds evidence that the defendants violated police rules, regulations, etc. to be relevant and probative with respect to [plaintiff's] claim that the defendants violated his constitutional rights, the court will deny defendants' motion and permit [plaintiff] to introduce the evidence"); *Regalado v. City of Chicago*, 1998 U.S. Dist. LEXIS 20528 at *6 (N.D. Ill. 1998) ("Defense counsel seeks substantial overkill" in moving along these lines); *Lopez v. City of Chicago*, 2005 WL 563212, *10 (N.D. Ill. March 8, 2005) (denying same motion because "such evidence may be relevant and

[confusion] may be avoided with a proper jury instruction . . . Defendants may raise objections on a case by case basis at trial"); *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003) (denying the same motion because "knowing violations of CPD regulations by Defendants are relevant to Plaintiffs' claims").  *See also Via v. Lagrand*, 2007 U.S. Dist. LEXIS 10080 at *17 (N.D. Ill. Feb. 12, 2007) ("*Thompson* [*v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006)] did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages.  The considerations may not be the same; a claim for punitive damages typically requires a showing that the defendant acted maliciously.")

While Plaintiff has no intention of arguing that disregard of a general order is proof that the constitution has been violated, breaches of protocol may nevertheless be probative to facts in dispute.  For example, evidence of general orders that proscribe Sheriff's Deputies from engaging in behavior such as that alleged in this lawsuit, goes to the Defendants' interest, bias, and motive to falsely testify in this case to avoid discipline or termination from the department.  Finally, the general orders may be relevant for such purposes as impeachment or refreshing recollection.

The point is, there is no justification for an order that deviations from expected behavior are *per se* inadmissible at trial.  To the extent they pass the relevance test (i.e., make a fact more likely) they should not be barred, particularly where a curative instruction can avoid any confusion.  *Threlkeld v. White Castle Sys., Inc.*, 205 F. Supp. 2d 935, 938-39 (N.D. Ill. 2002) (denying the same motion because "although not conclusive, evidence that the officers violated departmental rules and regulations may be relevant to the reasonableness of their actions.  A limiting instruction would cure any potential confusion to the jury . . .").  Indeed, the Seventh Circuit pattern instruction contemplates that this evidence may be admissible, and it deals with how to handle this exact issue:

> You have heard evidence about whether Defendants' conduct complied with an administrative rule.  You may consider this evidence in your deliberations.  But remember, the issue in this case is whether the Defendant [violated Plaintiff's rights], not whether an administrative rule might have been complied with [or violated].

*See* 7th Cir. Pattern Instr. 7.04.

**X.      Defendants' Motion *In Limine #10* - Evidence of Quality of Post-Incident Investigation**

While Plaintiff adamantly disagrees with Defendants' interpretation of the Local Government Tort Immunity Act and cases cited therein (DE 90, Defs' Motions *In Limine*, p. 14), Plaintiff Delgado agrees not to introduce any evidence of IAD's investigation, or the fact that an IAD investigation was even conducted.  *See* Plaintiff Delgado's response to Defendants first motion *in limine*, *supra.*  However, if the IAD finding is admitted or referenced in any way, or if Investigator Hull is permitted to testify outside of the limited scope for which Plaintiff Delgado seeks to call him, Plaintiff Delgado may seek to use parts of the IAD investigation or the lack of a quality investigation that was conducted to impeach Investigator Hull or his recommendation and underlying rationale in this case.

Dated: March 7, 2008                                 Respectfully Submitted,

                                                     /s/ Joey L. Mogul
                                                     JOEY L. MOGUL
                                                     BEN H. ELSON
                                                     People's Law Office
                                                     1180 N. Milwaukee Avenue
                                                     Chicago, IL 60202
                                                     (773)-235-0070