

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL DELGADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 3757 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| COOK COUNTY DEPUTY SHERIFF ) | |
| WILLIE MAK, et al. ) | Magistrate Judge Susan Cox |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER
ON THE PARTIES MOTIONS IN LIMINE

I. **Introduction**

On October 6, 2004, Defendants Willie Mak, Calvin Fields, and Martin Lowery, all Cook County Sheriff's Deputies, entered a shoe store owned by Plaintiff Manuel Delgado to enforce an *ex parte* court order entered in Plaintiff's father's divorce proceeding. The court order authorized Defendants to seize or inventory the contents of safes located in the basement of the store. Plaintiff contends that he was unaware of the order and therefore was reluctant to allow the seizure of any property in the store. During the course of Defendants' activities at the store, they arrested Plaintiff, who was injured during an altercation with Defendants as they attempted to place Plaintiff in handcuffs. Plaintiff later was charged with Obstructing a Police Officer, Resisting a Police Officer, and Failure to Possess a Firearm Owners Identification ("FOID") card. On February 2, 2006, Plaintiff went to trial on the Obstructing a Police Officer and Failure to Possess a FOID card charges and was acquitted of both charges.

Plaintiff subsequently brought this civil rights action under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's constitutional rights to be free from excessive force and false arrest and that Defendants conspired to violate Plaintiff's civil and constitutional rights. Plaintiff also asserts state law claims for malicious prosecution and intentional infliction of emotional distress. Cook County Sheriff Tom Dart and the County of Cook have been sued under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102), and the Sheriff has been sued under a *respondeat superior* theory as well. Defendants deny Plaintiff's allegations and maintain that there was probable cause for Plaintiff's arrest and that Plaintiff's injuries resulted from his own conduct.

The parties have submitted their proposed Final Pre-Trial Order and have fully briefed a number of motions *in limine*. The parties also have offered supplemental argument on the motions *in limine*, both in open court at the first of two Pre-Trial Conferences held on March 13, 2008, and in writing following that conference.[1] In this memorandum opinion and order, the Court addresses the motions *in limine* and certain other pre-trial matters.

## II. Standard

The Federal Rules of Evidence do not explicitly authorize *in limine* rulings. However, the District Court has inherent authority to manage the course of trials. Fed. R. Evid. 103(c); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). District courts have broad discretion in ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F. 3d 663, 664 (7th Cir. 2002). However, evidence should be excluded only when inadmissible on all possible grounds. *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). As a result, in some instances courts should

---

[1] Plaintiff advised the Court in his supplemental memorandum that he would forego any claim for Malicious Prosecution on the charge of Resisting a Peace Officer. Plaintiff earlier had agreed not to pursue a Malicious Prosecution claim on the Failure to Possess a FOID card. Thus, the only Malicious Prosecution claim remaining in the case concerns the charge for Obstructing a Police Officer.

defer rulings until trial, particularly where context would be helpful in determining matters such as relevancy, foundation, and potential prejudice. See *id*. A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial. *Id.* at 1041. And while a pre-trial ruling granting a motion *in limine* does bar the introduction of certain evidence, trial judges remain free to alter previously issued *in limine* rulings, within the bounds of sound judicial discretion. *Luce*, 469 U.S. at 41-42.

### III. Analysis

#### A. Defendants' motions in limine

##### 1. To Bar Any Reference to the Internal Affairs Investigation by the Internal Affairs Division of the Sheriff's office or its findings

After the incident giving rise to this lawsuit occurred, the Sheriff's Office Internal Affairs Division ("IAD") performed its own investigation of the incident ("Internal Affairs Investigation" or "IAI"). Both parties have submitted motions *in limine* regarding the IAI. They are in general agreement that the jury should not hear evidence that there was an investigation, the reasons for undertaking the investigation, or the findings and recommendations of the IAD. The Court agrees with the parties that the potential prejudice from testimony about the IAI substantially outweighs its questionable probative value, and thus grants the motion.

The decision to exclude all references to the IAI essentially resolves several other motions *in limine* which touch in various ways on aspects of the investigation. Specifically, Defendants' motion *in limine* 8 seeks to bar any evidence that Defendants reviewed and signed the "Cook County Sheriff's Office Administrative Proceedings Rights" before they spoke to the IAD investigator and Defendants' motion *in limine* 10 seeks to bar any reference to the nature and quality of the IAI itself.

Since reference to the IAI has been barred altogether, the references to the IAI that Defendants seek to bar in motions 8 and 10 are excluded and those motions are granted.

The ruling excluding reference to the IAI also bears on the disposition of Plaintiff's motions *in limine* A(1) and A(2). In briefing the motions *in limine*, Plaintiff noted that despite his view that references to the IAI should be excluded, he nevertheless felt it necessary to call the investigator himself, Daniel Hull, as a witness, for the sole purpose of verifying that Defendants made statements to Hull during the IAI. According to Plaintiff, those statements clearly are admissible as party opponent admissions under Fed. R. Evid. 801(d)(2)(A) and may be used as impeachment in the event that one or more Defendants offers testimony at trial that deviates from what he said to the investigator. Any complications that would have arisen from Plaintiff's perceived need to call Hull as a witness while keeping all reference to the IAI out of the case have been averted by the stipulation of defense counsel that if the statements made to Hull are used for impeachment, Defendants will admit that they made prior statements and that those statements were accurately transcribed. It bears repeating also that, in light of the prior rulings, Plaintiff will not be permitted to mention or elicit testimony that the statements were made to an IAD investigator or in connection with an IAI.

The final, and perhaps most difficult, issue relating to the IAI is Plaintiff's motion *in limine* A(2) to bar testimony that Investigator Hull attempted to speak with Plaintiff and that Plaintiff declined to be interviewed in connection with the IAI. Defendants contend that Plaintiff cannot have it both ways – if both sides' responses to the IAD investigator are not placed before the jury, then neither sides' responses should be. At first glance, that argument appears sensible. But upon further reflection, it is not compelling. The detailed statements provided by Defendants in response to questions posed by an investigator from within their own department are far more probative than the silence of Plaintiff, on the advice of counsel, in response to a request for an interview from a Sheriff's

Department investigator. Moreover, the minimal probative value of Plaintiff's silence in those circumstances is substantially outweighed by the prejudice to Plaintiff that would attend injecting Plaintiff's refusal to speak to Investigator Hull into the case without providing any context because of the bar on any discussion of the IAI. For these reasons, the Court grants Plaintiff's motion *in limine* A(2).

2. *To Bar any Evidence, Testimony, Argument, or Reference that Plaintiff has Suffered any Permanent Injury or will need Future Medical Treatment*

Defendants seek to bar Plaintiff from introducing any evidence, testimony, or argument concerning alleged permanent injuries or future medical problems and medical treatment. In support of that motion, Defendants insist that Plaintiff has no competent medical testimony to back any such claims. Defendants' argument rests primarily on the fact that Plaintiff's experts did not examine the Plaintiff at the time that Plaintiff's alleged injuries occurred. One of those experts, Dr. Scott Spencer, first saw Plaintiff four months after the incident involving Defendants, while the other expert, Dr. Adam Bennett, did not examine Plaintiff until more than two years had passed since the incident.

Plaintiff responds that the testimony of his own experts and the acknowledgments of Defendants' expert, Dr. Draganich, will provide sufficient evidence from which a reasonable jury could conclude that Plaintiff suffered permanent injuries as a result of the incident on October 6, 2004, and that Plaintiff will need further medical treatment to remedy those injuries. Plaintiff further contends that the permanency of his injuries can be traced through his medical records and the course of his medical treatment, and that the delay in confirming the full rupture of his left bicep tendon through an MRI may go to the weight of the testimony supporting Plaintiff's claim of permanent injury, but not to its admissibility.

At this point, the Court cannot conclude that Plaintiff's proposed evidence of permanent injuries, future medical problems, and/or the need for future medical treatment would be "inadmissible on all possible grounds." *Hawthorne Partners*, 831 F. Supp. at 1400. Ruling on this motion is therefore reserved.

3. *To Bar any References to whether Defendants may be indemnified by Cook County for any Compensatory Damages*

Under Illinois law, Cook County is responsible for indemnifying compensatory damage awards Plaintiff may receive against Defendants, because it is undisputed that Defendants were acting within the scope of their employment at the time of the incident on October 6, 2004, that gave rise to this action.[2] Defendants seek to exclude any references to Cook County's indemnification obligations on the ground that such obligations are irrelevant to the issues of liability that are at issue in this case. Defendants further contend that they would suffer prejudice if the jury were apprised of the County's indemnity obligations, because jurors may be more likely to find for Plaintiff on liability or inflate a compensatory damages award if they knew that Defendants themselves would not be on the hook financially.

The Seventh Circuit has sided with Defendants on this issue to a point, holding that "[i]n the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government – not the individual defendants – is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence,

---

[2] Under Illinois law, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article...A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make overall policy decisions for such entity considers it advisable to enter into such a settlement or compromise." 745 ILCS 10/9-102

far from being required, is inadmissible"). However, when defendants who benefit from a right to indemnification nevertheless claim an inability to pay damages, such defendants are deemed to have "opened the door" to evidence of the statutory entitlement to indemnification. Thus, where only compensatory damages are at issue or where, as in *Lawson*, the individual defendant would be indemnified for both punitive and compensatory damages, the general rule is easy to apply: evidence of indemnification is inadmissible unless defendants open the door by injecting their personal financial circumstances into the case.

This case, however, presents the more complicated scenario in which the indemnity obligation applies only to compensatory damages and Plaintiff seeks punitive as well as compensatory damages from Defendants.³ To recover punitive damages under Section 1983, Plaintiff must show that the individual officer acted with "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); see also *Woodward v. Corr. Med. Servs. Of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004).⁴ And if that standard is met, the jury then must also determine whether the defendant's conduct "is of that sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Smith*, 461 U.S. at 54.

As part of the calculus involved in determining how much in punitive damages would impose a proper deterrent (or punishment), the net worth of the defendant may be relevant information.

---

³ Although the Local Tort Immunity Act requires Cook County to indemnify the individual Defendants and pay compensatory damages, the individual Defendants are personally responsible for punitive damages.

⁴ Plaintiff has two state court claims remaining for the jury: (1) malicious prosecution; and (2) intentional infliction of emotional distress. Punitive damages are not recoverable in actions claiming intentional infliction of emotional distress. See *Knierim v. Izzo*, 22 Ill.2d 73 (1961). To recover punitive damages for malicious prosecution requires a higher degree of malice (e.g. actual malice). See *Templeman Co. v Liberty Mut. Ins. Co.*, 316 Ill. App. 3d 379 (1st Dist. 2000); *Swick v. Liautaud*, 169 Ill. 2d 504, 522 (1996) (J. McMorrow, specially concurring) ("In Illinois * * * punitive damages have been available in malicious prosecution actions for at least 125 years").

However, when defendants' net worth is injected into the case to assist the jury in determining whether to award punitive damages (and, if so, how much to award), that information also may influence the jurors in their determination of compensatory damages. For example, if in this case one or more of the Defendants introduces evidence of a low net worth, the jury may award a lower amount of compensatory and/or punitive damages than it would have awarded in the absence of any testimony of Defendants' net worth – and, under the general rule set forth in *Lawson*, the jury would do so ignorant of the fact that Defendants would not be responsible for paying any compensatory damages.

When defendants have chosen to introduce evidence that they are personally responsible for punitive damages, courts in this District generally have permitted plaintiffs to inform the jury defendants were entitled to be indemnified for compensatory damages. See *Galvan v. Norberg*, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006) ("[D]efense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets, fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages") (Shadur, J.); see also *Mohr v. Chicago Reform Bd. Of Trustees of the Bd. Of Educ.*, 155 F. Supp. 2d 923, 928-30 (N.D. Ill. 2001) (Bucklo, J.); *Via v. Lagrand*, 2007 WL 495287, at *4-*5 (N.D. Ill. Feb. 12, 2007) (Kennelly, J.). In at least one case, the court has suggested that a curative instruction also should be given advising the jury that evidence of defendants' individual financial circumstances should be considered only as to amount of punitive damages, if any, the jury chooses to award. *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (Denlow, M.J.).

In this case, counsel for Defendants suggested in the initial Pre-Trial Conference that, if necessary, Defendants would forego any mention of their financial status to avoid any mention to the

jury of the County's indemnification obligations. If Defendants adopt that course and the jury awards punitive damages in an amount that Defendants consider excessive, Defendants may be entitled to present evidence of their financial circumstances in connection with a motion for post-trial remittitur. See, e.g., *Harris v. Harvey*, 605 F.2d 330, 341 (7th Cir. 1979) (directing trial court to consider reducing punitive damages award if, on remand, defendant could show financial hardship); *King v. Macri*, 993 F.2d 294, 298 (2d Cir. 1993) (noting that "a district judge has some discretion to receive evidence of a defendant's financial resources in considering a motion to reduce the award by remittitur"); *Estate of Davis v. Hazen*, 582 F. Supp. 938, 941 (C.D. Ill. 1983) (setting hearing to consider defendant's financial worth in connection with determination of "whether a reduction in the amount of punitive damages is warranted").

At this time, the Court rules that Plaintiff may not refer to the fact that Cook County has an obligation to indemnify Defendants for any compensatory damages awarded in this case unless Defendants inject the issue of their individual financial circumstances into the case. However, if Defendants choose to "apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages" (*Galvan*, 2006 WL 1343680, at *2), subject to an appropriate limiting instruction that "Defendants' finances address punitive damages only." *Townsend*, 287 F. Supp. 2d at 874.

   4. *To Exclude All Witnesses (Except Parties) from the Courtroom during Testimony*

The parties have agreed to this motion and it is therefore granted.

   5. *To Bar any Testimony, Evidence, or Argument Regarding the Prior Disciplinary Records of any of the Defendant Officers*

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident..." Fed. R. Evid. 404(b). Plaintiff submits that he may wish to introduce Defendants' disciplinary records at trial to show that Defendants had a motive to lie in this case for fear of further discipline or termination.

In considering the admissibility of prior bad acts, the Court applies a four-part test: (1) proof of the prior act must be directed towards establishing a matter in issue and not just indicating propensity to act in accordance with the previous act; (2) the prior act must be recent enough and similar enough to be relevant to the matter in issue; (3) there must be sufficient evidence for the fact-finder to conclude that the similar act was in fact committed; and (4) the probative value of the evidence must not be outweighed by the danger of unfair prejudice. *Okai v. Verfuth*, 275 F.3d 606, 610-611 (7th Cir. 2001) (citations omitted). The Seventh Circuit has made clear that a trial judge is not required to allow a plaintiff to introduce prior disciplinary records against an officer in an excessive force case. *Id.* at 611.

Based on the discussion at the Pre-Trial Conference, there appears to be no evidence of prior discipline of any of the Defendants for similar issues. Nor has Plaintiff made any specific showing or offer of proof as to what Defendants' disciplinary records would show or how the standard for Rule 404(b) evidence can be satisfied. See *Okai*, 275 F.3d at 612; *Mecom Holding Co. v. Baxter Travenol Lab., Inc.*, 106 F.3d 1388, 1395 (7th Cir. 1997); *United States v. Martinez*, 988 F.2d 685, 700 (7th Cir. 1993); *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 929 (7th Cir. 1984). In the absence of any such showing, Plaintiff's "motive" argument, standing alone, would swallow the rule and provide an end-run around the four-part analysis under Rule 404(b).

At this point, the Court has before it nothing more than Plaintiff's suggestion that because Defendants have been subject to some unidentified disciplinary proceedings, they may have a motive to falsely testify in this case (to avoid further discipline). Defendants' motion to bar any testimony, evidence, or argument regarding the prior disciplinary records of Defendants therefore is granted, subject to reconsideration if Plaintiff, outside the presence of the jury and prior to seeking to introduce such evidence, can identify specific disciplinary records of one or more Defendants that are admissible under the Rule 404(b) standard.

6. *To Bar Plaintiff from Offering any Testimony, Evidence, or Argument Regarding any other Incidents Involving the Use of Excessive Force*

Plaintiff has agreed not to offer "any references, testimony or evidence of other instances of excessive force cited or portrayed in the media." On the basis of the discussion at the Pre-Trial Conference, the parties agreed on the parameters of the testimony, evidence, and argument targeted by this motion. The motion therefore is granted.

7. *To Bar Plaintiff from Offering any Testimony, Evidence, or Argument Regarding any Party's or Witness' Conviction of a Crime Unless the Requirements of Fed. R. Evid. 609 are Satisfied*

In the discussion at the Pre-Trial Conference, counsel agreed that the only prior conviction as to any party or witness of which counsel are aware involved a misdemeanor conviction of one of the Defendants approximately twenty years ago. Plaintiff has agreed not to seek to admit any evidence of that conviction. In light of that agreement and the fact that the motion seeks only to bar testimony, evidence, or argument concerning prior convictions *unless the requirements of Rule 609 are satisfied*, the motion seems entirely uncontroversial and is granted.

8. *To Bar Plaintiff, his attorneys and witnesses from offering any evidence of the "Cook County Sheriff's Office Administrative Proceedings Rights"*

Defendants' motion *in limine* 1 was granted and therefore all references to the IAI are barred. This motion *in limine* falls within the scope of that broader motion and therefore is granted as well.

9. *To Bar Plaintiff from Offering any Testimony, Evidence, or Argument Regarding the Existence of, or Standards Set by, any Sheriff's General Orders or other Policies and Procedures*

The seminal case in this Circuit on the admissibility of testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders of police or sheriff's departments is *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) – a case that both parties addressed extensively in their briefs. As in this case, *Thompson* involved a Section 1983 claim (for excessive force) and a state law claim (for wrongful death) arising out of the arrest of the plaintiff. The district court granted a motion *in limine* seeking to "exclude any reference in testimony, evidence, or argument to the CPD's General Orders, policies, and procedures." *Id.* at 449 & n.12 (explaining the slight discrepancy between the motion that the court granted and the text of the docket entry reflecting the granting of the motion). The Seventh Circuit affirmed the district court's ruling, both with respect to the use of General Orders as evidence of the federal constitutional violation and as evidence in support of the state law claim.

As to the constitutional violation, the Seventh Circuit categorically stated that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 455 (emphasis added); see also *Whren v. United States*, 517 U.S. 806, 815 (1996) (holding that internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). In elaborating on its ruling, the Seventh Circuit explained that while evidence,

testimony, or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion, or salary decisions" made by the Defendants' superiors, that kind of information is "immaterial" in proceedings before a district court on claims of constitutional violations and therefore "properly excluded" in rulings on motions *in limine*. *Thompson*, 472 F.3d at 455.[5] For all of these reasons, as Plaintiff acknowledges, the existence of the General Orders cannot be used in this case to show that the Plaintiff's constitutional rights were violated, as Plaintiff alleges in Counts I, II, and III of his complaint.[6]

Defendants also contend that testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders would be improper as to Plaintiff's state law claims. In *Thompson*, the Seventh Circuit "assume[d], without deciding, that the CPD's General Orders were relevant to [Plaintiffs'] wrongful death claim," but nevertheless "conclude[d] that they were properly excluded under Rule 403." 472 F.3d at 456. Although the statutory wrongful death claim at issue in *Thompson* appears to impose liability under a negligence standard (see *id.* at 457; see also 740 ILCS 180/1; *Leavitt v. Farwell Tower Ltd. P'ship*, 252 Ill. App. 3d 260, 264 (1993)), the Seventh Circuit relied on Illinois case law holding that "violation of self-imposed rules or internal guidelines * * * does not normally impose a general duty, *let alone constitute evidence of negligence, or beyond*

---

[5] Instead of considering evidence of rules, regulations, or General Orders, jurors are to judge the "reasonableness" of the Defendants' conduct through "careful attention to the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* at 454 (quoting *Abdullah v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005)). And in considering Plaintiff's false arrest claim, the jury likewise will evaluate whether "the facts and circumstances known to [Defendants] at the time of the arrest reasonably support a belief that [Plaintiff] committed a crime." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

[6] "The fact that excessive force is 'not capable of precise definition' necessarily means that, while the [General Order] may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered "objectively reasonable" under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Thompson*, 472 F.3d at 454.

*that, willful and wanton conduct."* Thompson, 472 F.3d at 457 (emphasis added) (quoting *Morton v. City of Chicago*, 286 Ill. App. 3d 444 (1997)). Moreover, in completing its Rule 403 analysis, the Seventh Circuit expressly addressed – and rejected – the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. *Id.* As the court explained, "[a]ny limiting instruction explaining to the jury that, although General Orders do not create a duty on the part of an officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding – and that they could not be considered in conjunction with the plaintiffs' § 1983 claims – would have led to unnecessary and detrimental jury confusion." *Id.*

On the basis of the Seventh Circuit's decision in *Thompson*, therefore, any attempt to use General Orders, rules, or policies of the Sheriff's Department as evidence of a federal constitutional violation appears to be forbidden under Rule 401. *Thompson*, 472 F.3d at 454. In addition, under *Thompson*, any effort to use such General Orders, rules, or policies in support of a state law cause of action that applies a negligence or willful and wanton standard appears to face, at a minimum, a very high hurdle under Rule 403. *Id.* at 457.

In his opposition to Defendant's motion, Plaintiff cites several cases from this district in which violations of General Orders or rules have been permitted to be brought to the jury's attention. However, most of those cases were decided prior to *Thompson* and some of them are flatly inconsistent with *Thompson*'s teachings. Compare *Charles v. Cotter*, 867 F. Supp. 648, 664 (N.D. Ill. 1994) (finding that "evidence that the defendants violated police rules, regulations, etc. to be relevant and probative with respect to [plaintiff's] claim that the defendants violated his constitutional rights" and denying motion *in limine* on that basis) with *Thompson*, 472 F.3d at 455 (stating flatly that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established") (emphasis added);

*id.* ("Whether Officer Hespe's conduct conformed with the internal CPD General Orders concerning the use of force on an assailant was *irrelevant* to the jury's determination" of whether the officer's actions violated the Fourth Amendment) (emphasis added).

While it is clear under *Thompson* that (i) the proponent of such evidence, testimony, or argument has a heavy burden to shoulder under Rule 401 and Rule 403, and (ii) limiting instructions may not be a viable means of overcoming Rule 403 issues, the Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case. Put differently, to the extent that the door remains open under *Thompson*, it is only slightly ajar. See *Via*, 2007 WL 495287, at *6 ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages").

In light of the foregoing, the Court grants in part Defendants' motion *in limine* and bars any testimony, evidence, or argument regarding any Sheriff's Office General Orders, policies, or procedures in support of Plaintiff's Section 1983 liability claims. The Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson* and *Morton*. Should Plaintiff seek to introduce testimony, evidence, or argument regarding any Sheriff's Office General Orders, policies, or procedures in those limited circumstances, counsel for Plaintiff must notify the Court and counsel for Defendants outside the presence of the jury and with sufficient advance notice to permit analysis under Rules 401 and 403 in light of the applicable Seventh Circuit or Illinois case law.

*10. To Bar Plaintiff from Offering any Testimony, Evidence, or Argument, Except for Impeachment Purposes, Regarding the Nature and Quality of the Post-Incident Investigation*

Defendants' motion *in limine* 1 was granted and therefore all references to the IAI are excluded. This motion *in limine* falls within the scope of that broader motion and therefore is granted as well.

**B.     Plaintiff's Motions *In limine***

*A(1).   To Bar any Reference or Testimony with Respect to Investigator Hull's Recommendation and Underlying Rationale*

Defendants' motion *in limine* 1 was granted and therefore all references to the IAI are excluded. This motion *in limine* falls within the scope of that broader motion and therefore is granted as well.

*A(2).   To Bar any Attempt to Elicit Testimony from Investigator Hull with Respect to Statements Made by the Plaintiff*

As explained above, the Court grants this motion.

*B.      To Bar any Testimony, Evidence, Reference or Argument Pertaining to Plaintiff Delgado's Father's Divorce*

The parties agreed at the initial Pre-Trial Conference with respect to the permissible scope of testimony concerning Plaintiff Delgado's father's divorce. Defendants may inquire into the extent of Plaintiff's knowledge of the existence of the divorce case and may establish that the Defendants went to the shoe store to enforce the court order entered in the divorce case. However, there may be no attempt to elicit testimony concerning the claims of the parties in the divorce case, the respective merits of the divorce case, or the items that were inventoried in carrying out the court order. The parties also have agreed that the testimony of Defendants' witness, Mr. Haddon – who was an attorney in the underlying divorce proceeding and present in connection with the enforcement of the court order – will be limited to his observations of the incident giving rise to this litigation.

Plaintiff's motion *in limine* B is thus granted as modified by the parties' agreement articulated above.

        C.      *To Bar any Testimony, Evidence, Reference or Argument Pertaining to Plaintiff not having a Firearm Owner Identification Card*

Because Plaintiff has agreed to withdraw his malicious prosecution claim as it relates to the charge for failure to possess a FOID card, there is no conceivable relevance to any testimony concerning Defendants' discovery of guns in the safe at the store or Plaintiff's alleged failure to possess a FOID card. Accordingly, Plaintiff's motion to bar any testimony, evidence, reference, or argument pertaining to whether Plaintiff possessed a FOID card is granted.

        D.      *To Bar Reference to Relationship of Plaintiff's Counsel in this Action to Plaintiff's Counsel in Criminal Defense Action.*

The parties have agreed to this motion and it is therefore granted.

### IV. Conclusion

For the reasons stated above and subject to the limitations and explanations noted in this opinion, the Court grants Plaintiff's motions *in limine* A(1), A(2), B, C, and D. No ruling is necessary as to Plaintiff's motion *in limine* A(3), although the issue raised by Plaintiff has been addressed in this opinion. For the reasons stated above and subject to the limitations and explanations noted in this opinion, the Court grants Defendants' motions *in limine* 1, 4, 5, 6, 7, 8, and 10, grants in part and reserves ruling in part on Defendants' motions *in limine* 3 and 9, and reserves ruling on Defendants' motion *in limine* 2.

Dated: March 31, 2008

                                                                         Robert M. Dow, Jr.
                                                                         United States District Judge