# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MANUEL DELGADO, | ) No. 06 C 3757 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert M. Dow Jr. |
| Cook County Deputy Sheriff WILLIE MAK, et al. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF DELGADO'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL PETITION FOR ATTORNEYS' FEES AND COSTS

Respectfully submitted by,

JOEY L. MOGUL
BEN H. ELSON
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622
773/235-0070

Attorneys for Plaintiff Manuel Delgado

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MANUEL DELGADO, | ) No. 06 C 3757 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert M. Dow Jr. |
| Cook County Deputy Sheriff WILLIE MAK, et al. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF DELGADO'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL PETITION FOR ATTORNEYS' FEES AND COSTS

### TABLE OF CONTENTS

I.      Plaintiff's Requested Attorneys' Fees Should Not be Proportionally Reduced.................2

II.     Defendants Have Waived Any Objection to Plaintiff's Counsel's Requested Hourly Rates; Moreover, Said Market Rates Are Reasonable.........................................................4

III.    The Hours Sought by Consulting Attorneys Flint Taylor and John Stainthorp are Reasonable and Should be Approved................................................................................8

IV.     Defendants' Failure to Comply With Local Rule 54.3 is Dispositive................................9

V.      Plaintiff's Counsel's Time Expenditures Were Neither Improperly Documented Nor Excessive...........................................................................................................................10

      A.      Criminal Defense File...........................................................................................14
      B.      Drafting the Complaint..........................................................................................15
      C.      Plaintiff's 26(a)(1) Disclosures............................................................................16
      D.      Reviewing and Responding to Defendants' Motion to Dismiss............................16
      E.      Time Spent With Manuel Delgado Answering Interrogatories, and Preparing Him For His Deposition and Trial Testimony.................................................................16
      F.      Reviewing Defendants' Discovery, Conducting Defendants' Depositions, Abstracting and Preparing Cross-Examinations of the Defendant Officers for Trial......................................................................................................................17
      G.      Reviewing and Abstracting Medical Records, Preparing Treating Doctors and Experts to Testify, and Preparation and Deposition of Louis Draganich...............19
      H.      Work Completed on the Pre-Trial Order and Jury Instruction..............................20

I.     Work Expended on Pre-Trial and Trial Matters.....................................................21

CONCLUSION..............................................................................................................................22

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL DELGADO, | ) No. 06 C 3757 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert M. Dow Jr. |
| Cook County Deputy Sheriff WILLIE MAK, et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF DELGADO'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL PETITION
FOR ATTORNEYS' FEES AND COSTS**

### TABLE OF AUTHORITIES

### CASES

*Berberena v. Coler*, 753 F.2d 629 (7th Cir. 1985) ........................ 8

*Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997) .................... 3

*Connolly v. National School Bus Service, Inc.*, 177 F.3d 593 (7th Cir. 1999) ........................ 2, 3

*Cooper v. Casey*, 897 F. Supp. 1136 (N.D. Ill. 1995), *rev'd on other grounds*, 97 F.3d 914 (7th Cir. 1996) ........................................................................ 11

*Dominguez v. Hendley*, No. 04 C 2907 (N.D. Ill. August 21, 2007) .......................... 6

*Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863 (7th Cir. 1995) ................................. 4

*Entertainment Software Association v. Blagojevich*, 2006 U.S. Dist. LEXIS 93638 (N.D. Ill. Aug. 9, 2006) ........................................................................ 7

*Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558 (7th Cir. 2006) ................. 11, 12

*Flaherty v. Marchand*, 284 F. Supp. 2d 1056 (N.D. Ill. 2003) ..................................... 7

*Spina v. Forest Preservation District*, 2002 U.S. Dist. LEXIS 16005 (N.D. Ill. July 30, 2002) ............................................................................................ 6, 21

*Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16570 (N.D. Ill. Sept. 19, 2003) ...... 9, 11, 12

*Gautreax v. Chi. Housing Authority*, 491 F.3d 649 (7th Cir. 2007) ............................................ 8

*Hendley v. City of Waukegan*, 06 C 6885................................................................................6

*Henry v. Webermeier*, 738 F.2d 188 (7th Cir. 1984) .................................................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 3, 4

*In the Matter of Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001) ........................ 11

*Kotsillieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992) ............................................... 11

*Kunz v. City of Chicago*, 01 C 1753 ................................................................. 10, 13

*Latino v. Kaizer*, 864 F. Supp. 835 (N.D. Ill. 1994), *rev'd on other grounds*, 58 F.3d 310
      (7th Cir. 1995) ........................................................................................ 12

*Lopez v. City of Chicago*, 2007 U.S. Dist. LEXIS 85708 (N.D. Ill. Nov. 20, 2007) ............... 6, 9

*Markon v. Board of Education*, 525 F. Supp. 2d 980 (N.D. Ill. 2007) ........................................ 11

*Miller v. Neathery*, 1995 U.S. Dist. LEXIS 4230 (N.D. Ill. Apr. 3, 1995), *rev'd on other
      grounds*, 52 F.3d 634 (7th Cir. 1995) ................................................................. 8

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ........................................................... 5

*Mohr v. Chicago School Reform Board of Trustees*, 194 F. Supp. 2d 786 (N.D. Ill.
      2002) ....................................................................................... 12, 15

*National Foreign Trade Council, Inc. v. Giannoulias*, 2007 U.S. Dist. LEXIS 66618 (N.D. Ill.
      Sept. 7, 2007) ......................................................................................... 7

*O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829 (N.D. Ill. 2007) ........................................ 6

*Oviedo v. Meyers*, 2004 U.S. Dist. LEXIS 16769 (N.D. Ill. Aug. 19, 2004) ................................ 4

*Shott v. Rush-Presbyterian-St. Luke's Medical Ctr.*, 338 F.3d 736 (7th Cir. 2003) .................... 5

*Spegnon v. The Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999) ............................ 3, 6

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) ........................................................ 3

*Vardon Golf Co. v. Karsten Manufacturing Corp.*, 2003 U.S. Dist. LEXIS 5072 (N.D. Ill.
      Mar. 31, 2003) ....................................................................................... 9, 13

## STATUTES

Fed. R. Civ. P. 11 ......................................................................................................... 16, 17, 18, 21

Local Rule 54.3 ................................................................................................................................ 9

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **MANUEL DELGADO,** | ) **No. 06 C 3757** |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Judge Robert M. Dow Jr.** |
| **Cook County Deputy Sheriff WILLIE MAK, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF DELGADO'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL PETITION FOR ATTORNEYS' FEES AND COSTS

Defendants in their response to Plaintiff's supplemental fee petition fail to refute that Plaintiff was a prevailing party. The Defendants also fail to address the law and factors set forth in *Hensley* and its progeny to rebut Plaintiff's arguments that Plaintiff obtained an excellent result at trial, achieving a high degree of success in obtaining a jury verdict which more than doubled the amount offered to Plaintiff to settle the case. Rather, Defendants argue that Plaintiff's counsel's fees should be proportionally reduced by a straight 60%, disregarding the relevant case law that rejects such an approach.

In an alternative argument, Defendants attack Plaintiff's counsel's hours alleging they are improperly documented and excessive. Defendants advance this argument despite the fact that they flaunted Local Rule 54.3 by failing to provide these specific objections to Plaintiff's counsel's billing entries prior to the filing of the Parties' Joint Fee Statement. However, in light of the expectations clearly dictated in Local Rule 54.3, these objections are waived. Assuming this Court does not reject Defendants' objections out of hand, Defendants' arguments with respect to Plaintiff's counsel's hours fail to address the proper legal standards for determining whether the billing entries are sufficient. Finally, Defendants misrepresent both the hours Plaintiff's counsel spent on the selective activities Defense counsel believes Plaintiff's counsel is entitled to be compensated for and the actual work that these activities in fact entailed. Therefore, Defendants' arguments to reduce Plaintiff's hours should not prevail, and Plaintiff

1

should be awarded all of the attorneys' fees sought.

I.      **Plaintiff's Requested Attorneys' Fees Should Not be Proportionally Reduced.**

While Defendants correctly reiterate the factors enumerated in *Connolly v. Nat'l School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999), to evaluate the degree of success obtained by the Plaintiff in this case - - 1) "the difference between the judgment recovered and the recovery sought;" 2) the significance of the legal issues on which plaintiff prevailed;" and 3) "the public purpose served by the litigation - - the Defendants fail to discuss each of these factors in their response to argue that Plaintiff's degree of success was "limited." In fact, Defendants fail to respond to or refute Plaintiff's arguments that he obtained a high degree of success in light of the fact that the jury award of $125,000 was more than five times the monetary amount offered to him by the Defendants at the end of discovery. (See Pl's Memo, p. 6). As to the second factor, Defendants do not contest that this lawsuit and trial addressed significant legal issues. (Id. at pp. 8-9). Finally, Defendants also fail to argue that the litigation did not serve a public purpose.

With respect to this last factor, civil rights suits, and in particular this lawsuit, are one of the only avenues civilians have to hold law enforcement officers, particularly Deputy Sheriffs, accountable for their misconduct. As noted below, all three Defendant Officers have lengthy complaint records documenting scores of civilian complaints lodged against them. They, however, have never been properly supervised or disciplined with respect to their alleged acts of misconduct - - most significantly in this very case - - and therefore have enjoyed impunity with respect to their misconduct. Mr. Delgado's jury verdict serves an important public purpose as it is an official condemnation of their egregious abuse of power. The jury verdict will hopefully serve to deter these officers in the future from engaging in such misconduct, thereby protecting the rights and well being of other civilians in Cook County.

Instead of refuting the arguments and evidence Plaintiffs presented to demonstrate that the verdict was an excellent result, Defendants ask this Court to reduce Plaintiff's requested fees by "a straight sixty percent" based on what they allege was "limited success at trial." Defendants' analysis is solely based on the fact that Plaintiff won two of the five claims

asserted.[1] In so doing, they ignore the decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and its progeny, which squarely reject the use of a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435, n.11; *see also Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) ("meat-axe . . . [p]ercentage reductions of the kind the district court used are not a good way to make adjustments for partial success").

Where, as here, the Plaintiff achieves what he set out to achieve, no fee reduction is justified merely because some of the claims did not succeed. The *Hensley* decision teaches that there are two categories of "partial success" cases. The first involves cases where the plaintiff presents distinctly different claims for relief that are based on different facts which are "distinct in all respects from his successful claims." 461 U.S. at 440 (unrelated claims must be treated "as if they had been raised in separate lawsuits"). The second category - - into which this case fits quite plainly - - consists of those cases "where the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis [so] the district court should focus on the significance of the overall relief obtained by the plaintiff." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988), quoting *Hensley*, 461 U.S. at 435.

Contrary to the Defendants' argument, as set forth in footnote one, that "the claim for excessive force and the claim for false arrest are factually and theoretically distinct from one another" (See Defs' Memo, p. 6, n. 1), a review of the various claims pled here establishes that they all center around the same core nucleus - - whether the Defendants Officers' treatment of

---

[1] Defendants fail to cite any case to support their argument that Plaintiff's requested attorneys' fees should be reduced by a straight 60%, however, they cite to both *Connolly* and *Spegnon v. The Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999) to discuss the current state of the law. It is worth noting that neither of these cases support cutting Plaintiff's requested attorneys' fees as both cases are vastly different from the case at hand. Both decisions involve cases that address the success on the merits of cases that settled and did not go to trial. Moreover, in *Connolly*, the District Court found the plaintiff had a limited degree of success justifying the reduction of the lodestar amount of fees in light of the fact that the final settlement amount of $10,000 was two and a half times below a previous offer of $25,000 to settle the case. *Connolly*, 177 F.3d at 598. In *Spegnon*, the court found the plaintiff had a limited degree of success justifying the reduction in the lodestar amount where the plaintiff had accepted $1,100 offer of judgment, although he sought $1,781.25 in back pay and he failed to achieve any finding of liability or award for damages on a discriminatory discharge claim in which he initially sought $25,000.

Mr. Delgado in his shoe store violated his rights.[2] Unlike some cases, any attempt to subdivide Plaintiff's grievance into distinct pieces is artificial. Time spent by Plaintiff's counsel on Plaintiff's false arrest claim was absolutely necessary to proving Plaintiff's excessive force claim, the chief and primary claim of the case. Specifically, the Defendant Officers' use of force was directly linked to Plaintiff's arrest. Further, since the Defendant Officers alleged Mr. Delgado was obstreperous, resistant and combative as a basis for his arrest - - the charges of obstruction of service of civil process and obstruction of a peace officer - - Plaintiff's counsel was obligated to attack this defense because it would potentially justify the force the Defendant Officers' used, thereby defeating the excessive force claim. Therefore, Plaintiff's false arrest (factually and temporally) was the direct result of the Defendants' excessive force. *See Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995) ("Because of the interrelated nature of the two claims, her attorneys had to prepare for the 'litigation as a whole'") (quoting *Hensley*). Moreover, the amount of time and effort spent disputing whether the Defendant Officers had probable cause to arrest Mr. Delgado was a small fraction of the time spent establishing that they used an unreasonable degree of force to effect his arrest. Under the case law, therefore, this does not qualify as a partial success case for which a downward departure from the lodestar is warranted because the evidence and work on the various claims was intertwined and necessary to all of the claims. *Dunning*, 62 F.3d at 873 ("Where a plaintiff has obtained excellent results, [his] attorney should recover a fully compensatory fees, and that ; . . . fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

## II.    Defendants Have Waived Any Objection to Plaintiff's Counsel's Requested Hourly Rates; Moreover, Said Market Rates Are Reasonable.

Defendants launch an improper indirect attack on Plaintiff's counsel's requested hourly rates, repeatedly characterizing Mogul's rate as "premium" and Taylor and Stainthorp's rates as

---

[2] Defendants citation to *Oviedo v. Meyers*, 2004 U.S. Dist. LEXIS 16769 (N.D. Ill. Aug. 19, 2004) (Mason, MJ.), in support of their argument is misplaced. *Oviedo* is distinguishable because Oviedo's counsel *conceded* that his successful false arrest claim was factually unrelated to his four unsuccessful excessive force claims. *Id.* at *5. Moreover, unlike Mr. Delgado's unsuccessful false arrest claim, which arose out of the same incident as his successful excessive force claim, three of Oviedo's excessive force claims occurred on a separate day from his false arrest claim. (See Oviedo's Fourth Amended Complaint, Case No. 99 C 5216, Dkt. # 104).

"exorbitantly high" and arguing, in a twisted use of logic, that all of Taylor and Stainthorp's hours should be disallowed in light of Mogul's requested rate. Defendants make these arguments despite the fact that they explicitly stated in the Parties Joint Statement that they "are not challenging the hourly rates sought by any of Plaintiff's attorneys." (See the Parties Joint Statement with Respect to Plaintiff's Attorney's Fees and Costs Pursuant to Local Rule 54.3(e), Dkt. # 128, Exhibit D, ¶5). By previously conceding that Plaintiff's counsel's requested hourly rates are reasonable, Defendants have clearly waived the objections they now raise for the first time in their response brief. However, if the Court is inclined to consider the issue of hourly rates, Plaintiff's counsel provides the following additional evidence, which establishes that their requested hourly rates are well within the range of those charged by lawyers of comparable skill, experience and reputation in the Chicago area.

Over the past forty years, the People's Law Office has developed an almost unique level of success in the field of § 1983 police misconduct, police torture, police and prison violence, wrongful conviction, and *Monell* claims litigated in the trial courts, Seventh Circuit, and the Supreme Court. (See Exhibits A-D, affidavits submitted by Plaintiff's counsel describing in particularity their experience). Mogul, who served as lead counsel, is the director of a Civil Rights Clinic at DePaul University College of Law teaching law students both the substantive law and practice of litigating police misconduct cases. She has eleven years of experience as an attorney litigating § 1983 cases and several years of experience working on civil rights cases prior to becoming an attorney. (See Exhibit A). Senior partners Taylor and Stainthorp, who provided limited consultation to Mogul and Elson, have been litigating § 1983 cases for more than 36 and 25 years, respectively, and their considerably less experienced associate, Elson, who served as the second chair at trial, has been litigating § 1983 cases for three years. (See Exhibits B-D). Plaintiff is seeking $325 per hour for Mogul, $200 per hour for Elson, $400 per hour for Stainthorp and $525 per hour for Taylor. As further demonstrated below, these rates are more than reasonable considering Plaintiff's counsel's skills and experience in the field of § 1983 litigation, and are supported by the local market.[3]

---

[3]The rates sought by Plaintiff's counsel are current rates as Plaintiff's counsel do not seek interest on the amount. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 745 (7th Cir. 2003)

Defendants do not dispute that an attorney's reasonable hourly rate is determined based on the market rate for the attorney's services, which is the rate charged by lawyers of similar ability and experience in the community. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). Instead, Defendants cite cases that reflect rates awarded at the lowest end of the spectrum of hourly rates, while ignoring numerous cases where the rates are more reflective of local current market rates in Chicago. For example, in *Dominguez v. Hendley*, No. 04 C 2907 (N.D. Ill. August 21, 2007), Judge Shadur recently awarded the following market rates to attorneys from another small civil rights firm of similar size and skill to the People's Law Office:

| Lawyer | Years of Practice | Hourly Rate |
| --- | --- | --- |
| Arthur Loevy[4] | 17 | $450/hour |
| Jon Loevy | 14 | $375/hour |
| Michael Kanovitz | 13 | $345/hour |
| Mark Reyes | 15 | $345/hour |
| Danielle Loevy | 13 | $325/hour |

The Affidavits of Counsel from Loevy and Loevy and the transcript of Judge Shadur's oral attorneys' fees decision in *Dominguez*, consolidated with the related indemnification case of *Hendley v. City of Waukegan*, 06 C 6885, are attached as Exhibits E and F hereto. Judge Bucklo approved the same current rates for lawyers from Loevy and Loevy in *Lopez v. City of Chicago*, 2007 U.S. Dist. LEXIS 85708 (N.D. Ill. Nov. 20, 2007); *see also* Affidavits of Counsel in *Lopez*, attached as Exhibit G; *Spina v. Forest Pres. Dist.*, 2002 U.S. Dist. LEXIS 16005 (N.D. Ill. July 30, 2002) ($350/hour for a civil rights attorney who graduated in 1993, which is $425/hour in 2008 dollars after adjusting for inflation);[5] *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829 (N.D. Ill. 2007) (approving without objection from Chicago a rate of $335/hour for an attorney admitted in 1997).[6]

Judge Kennelly granted rates appreciably higher than those sought by Mogul, Elson, Taylor and Stainthorp for work done in 2005 and 2006 by partners and associates of less

---

[4] Arthur Loevy has been admitted to practice since 1964, but spent 23 years as an elected trade union official and did not practice law during those years.

[5] Inflation was calculated using the United States Government's Bureau of Labor Statistics website which can be accessed at - - http://data.bls.gov/cgi-bin/cpicalc.pl

[6] Plaintiff's counsel has gone to the Illinois ARDC website, which can be accessed at https://www.iardc.org/lawyersearch.asp, to adduce this attorney's 1997 date of admission.

experience at Jenner and Block in a § 1983 First Amendment case:

| Lawyer | Years of Practice | Hourly Rate |
|--------|-------------------|-------------|
| Paul M. Smith | 27 | $585/hour |
| Kathleen Fallow | 10 | $450/hour |
| Kathleen Hartnett | 6 | $340/hour |
| Wade Thomson | 2 | $215/hour |

*Entm't Software Ass'n v. Blagojevich*, 2006 U.S. Dist. LEXIS 93638, *16 (N.D. Ill. Aug. 9,

2006); *see also, National Foreign Trade Council, Inc. v. Giannoulias*, 2007 U.S. Dist LEXIS

66618, **5-8 (N.D. Ill. Sept. 7, 2007) ($525-$550 per hour to partner at law firm with 23 years of

experience); *The National Law Journal*, Study of December 10, 2007, attached as Exhibit H, and

*Daily Business Review*, September 29, 2006, attached as Exhibit I.[7]

Similarly, Judge Denlow, in awarding $450 per hour for work done from 2000 to 2003 in

a Title VII case, to a solo partner in a small law firm, who, at that time, had 18 years of

experience, recognized the importance of setting fair market rates in order to attract competent

counsel to undertake representation of plaintiffs in high risk § 1983 cases:

> The Court credits Mr. Galarnyk for his success in the case, the risks involved, and
> the general need to encourage competent attorneys to take on civil rights cases.
> Mr. Galarnyk took a risk by assuming the Flaherty case on a contingency basis --
> the risk that he and his associates would spend many hours, over several years,
> and come away with nothing. Facing the potential burden of losing hundreds of
> thousands of dollars in fees, he took the case to trial and obtained a positive result
> for his client. He is the type of attorney the civil rights laws seek to encourage.

*Flaherty v. Marchand*, 284 F. Supp. 2d 1056, 1065 (N.D. Ill. 2003).[8]

In sum, Plaintiff's counsel's requested hourly rates are fully supported by the law and the

local market and are therefore appropriate.

---

[7] These studies by the *National Law Journal* and *Daily Business Review*, establish that attorneys'
rates "spiked" between 2004 and 2005, and again in 2007; that top senior partners at three large Chicago
law firms billed at $650, (Vedder Price), $690, (Lord, Bissell and Brook) and $845, (Winston and
Strawn), and that some small specialty firms also sustained rates that were "nearly as high." Exhibit H,
pp. 1, 8, 12-13; Exhibit I, pp. 4-5. *See also* Judge Shadur's similar conclusion in *Dominguez*.

[8] Plaintiff's counsel has gone to the Illinois ARDC website, which can be accessed at
https://www.iardc.org/lawyersearch.asp, to adduce Mr. Galarnyk's 1985 date of admission.

**III.     The Hours Sought by Consulting Attorneys Flint Taylor and John Stainthorp are Reasonable and Should be Approved.**

Defendants' suggestion, without citation to any case, that this Court should strike all of Taylor and Stainthorp's time because it amounts to "double billing for completion of the same tasks" is meritless. (See Defs' Memo, p. 1). In this instance, Taylor and Stainthorp did not bill for hours spent conducting similar tasks to Mogul and Elson. They did not bill for hours reviewing discovery, preparing for depositions, attending court dates, conducting or defending depositions, or preparing the vast majority of memoranda. Rather, Taylor and Stainthorp submitted hours for time spent consulting with Mogul and Elson at critical junctures in the case. Contrary to Defendants' insinuation, it is not unreasonable for attorneys to collaborate with more experienced attorneys within their firm. *See Gautreax v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) (determining that the district court did not abuse its discretion "in concluding that the time spent on intra-team communications was compensable . . . [w]here [it found] that the appropriate trimming took place to bring the billed hours within a reasonable range"); *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (affirming decision not to strike allegedly duplicative time spent in "strategy conferences and similar meetings with co-counsel" in billing records of two attorneys who were not the primary attorneys on the case); *Miller v. Neathery*, 1995 U.S. Dist. LEXIS 4230, *14 (N.D. Ill. Apr. 3, 1995), *rev'd on other grounds*, 52 F.3d 634 (7th Cir. 1995) ("Defendants' objection to the time spent in conference is unpersuasive. Time spent discussing issues with other attorneys is a basic element of the practice of law and is compensable, if reasonable, in a fee petition.").

As reflected in their time sheets, Taylor and Stainthorp's roles were restricted to advising Plaintiff's primary counsel. They spent slightly more than twenty hours combined consulting with Mogul and Elson regarding litigation and trial strategy, and witness examination. This time was both efficient and instrumental to Plaintiff's success at trial and was certainly justified by the result achieved. Considering the fact that Taylor and Stainthorp have more than sixty years of trial experience and success in § 1983 cases between them, Mogul and Elson would have been foolish not to tap their wealth of legal and strategic knowledge, and any rational client would

8

welcome and pay for such consultation.[9] If anything, Taylor and Stainthorp have underbilled in this case, since they trimmed from their time sheets the hours they spent observing and consulting at the trial, which are compensable as well. *See Vardon Golf Co. v. Karsten Mfg. Corp.*, 2003 U.S. Dist. LEXIS 5072, *12 (N.D. Ill. Mar. 31, 2003) (allowing two attorneys, who did not sit at counsel's table, to be compensated for the time they spent watching the trial from the courtroom gallery).

It is probable that Mr. DiBenedetto and Mr. Satter spent as much, if not more, time during this case consulting with senior lawyers from the State's Attorney's Office, some of whom Plaintiff's counsel observed sitting in the gallery at trial. Specifically, a fellow attorney from the State's Attorney's office provided advice to Mr. DiBenedetto and Mr. Satter when the jury repeatedly returned questions to the Court during its deliberations, the same role played by Mr. Taylor for Plaintiff's trial counsel.

In fact, this case was litigated in the most cost-efficient manner possible to the client (and now Defendants) considering that Mogul litigated the lion's share of the pre-trial proceedings on her own. Unlike many other civil rights police misconduct cases, Plaintiff's counsel did not have two attorneys litigate this case from the inception to end. Rather, Mogul was solely responsible for completing all litigation tasks throughout discovery to the point of pre-trial proceedings. In many cases Plaintiff's counsel are entitled to have two attorneys bill hours for their attendance at court dates, depositions and other litigation related to the case. *See Lopez v. City of Chicago*, 2007 U.S. Dist. LEXIS 85708, *14 (N.D. Ill. Nov. 20, 2007); *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16570, *16 (N.D. Ill. Sept. 19, 2003). Therefore, the fact that Plaintiff's law firm appointed only one attorney to litigate the majority of the case, with limited consultation by more senior partners, saved a great deal of money with respect to hours that could have been billed in the case. Therefore, Plaintiff is entitled to have the hours sought by Taylor and Stainthorp compensated at their current hourly rates.

## IV. Defendants' Failure to Comply With Local Rule 54.3 is Dispositive.

As set forth in Plaintiff's supplemental petition, Defendants' failure to provide specific

---

[9] Plaintiff's counsel also spent hours consulting with Ed Mogul, and other members of Plaintiff's counsel's law firm, as reflected in the time sheets, that Plaintiff's counsel is not seeking compensation for.

objections to Plaintiff's counsel's hours as required by Local Rule 54.3 constitutes a waiver. Defendants' reliance on the "sample joint statement" contained in the Appendix to Local Rule 54.3 is misplaced. In fact, the sample joint statement contains exactly the type of information Defendants failed to provide here - - specific objections to the amount of time spent, by whom, and for what task. The first time Plaintiff was made aware of Defendants' specific objections was when they filed their brief in response. In other words, the Local Rule's salutary purpose has been thwarted here because Plaintiff was unable to set forth to the Defendants the reasons why their objections are without merit, nor did he have the opportunity to clarify the disputed entries, or to compromise in order to resolve the dispute. Instead, the entire dispute must be litigated before the Court, with the attendant additional expenditure of attorney and judicial resources.

Since Plaintiff filed his brief, Judge Zagel, while deciding a § 1988 fee petition, reaffirmed the clear meaning waiver under Rule 54.3:

> [Plaintiff's attorneys] note that their opponents did not participate in the Local Rule 54.3 process, which requires the parties to meet and confer to resolve differences if they can. One reason for the rule is that, after years of hearing contests over fee petitions, it became clear to the Court that many disputes evolved from misunderstandings between the parties, the inability to confirm the basis for fee requests, or objections without looking at materials in the opponent's possession. Where the Rule is followed it does, in my experience, reduce the number of issues to be decided when fees are in dispute. Failure to follow the Rule waives objections to the petition.

*Kunz v. City of Chicago*, 01 C 1753 (N.D. Ill. August 14, 2008), attached hereto as Exhibit J. Under this case and the cases cited in Plaintiff's supplemental petition, failure to comply with the Local Rule is a more than sufficient basis to reject Defendants' position.

## V.     Plaintiff's Counsel's Time Expenditures Were Neither Improperly Documented Nor Excessive.

Defendants spend the bulk of their oversized brief, 20 pages in fact, waging an attack on Plaintiff's counsel's time sheets, alleging Mogul recorded her time improperly and that the hours expended by both Mogul and Elson were excessive.[10] As an initial matter, Mogul's time records

---

[10] If Defendants had timely shared these specific concerns during the creation of the Parties' Joint Fee Statement and listed the specific entries among the grounds for disagreement as required by Local Rule 54.3, Plaintiff's counsel could have made an effort to resolve any disagreement. Instead, Defendants chose to flaunt the Local Rule and sandbag Plaintiff with these objections after the expiration

provide the Court with sufficient information to discern how much time was spent on the various legal tasks which resulted in Plaintiff's victory. Moreover, Plaintiff's counsel's hours are far from excessive. Rather, their billing records, in light of the actual amount of work done, demonstrate that the hours billed were not only reasonable but cost-efficient.

A petition for fees should set forth a sufficient description of the type of work performed. *Kotsillieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992). The amount of itemization and detail required is a question for the market. *In the Matter of Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). "A court should not require any more than the level of detail playing clients find satisfactory." *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16570, *11 (N.D. Ill. Sept. 19. 2003). In this instance, Mogul's timesheets not only set forth a sufficient description of the work she engaged in, but also clearly indicate the hours were reasonable and necessary.

Defense counsel erroneously claims that Plaintiffs' counsel engaged in "block billing" when documenting hours expended and therefore such entries are not entitled to payment. Contrary to Defense counsel's representation, many of the selected hours highlighted are not in fact "block billing." Further, any hours that may appear to be similar to the practice of block billing, should not be discounted or rejected. *See Markon v. Bd. of Educ.*, 525 F. Supp. 2d 980, 984 (N.D. Ill. 2007) (Bucklo, J.) ("I do not find the entries defendants attack as 'lumping' prevent a court from determining whether the time was reasonably spent"). As the Seventh Circuit has stated, "although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).

With respect to Defendants' repeated accusation that the time Plaintiff's counsel spent litigating this case was "excessive" and "inefficient," Plaintiff responds first by noting that a defendant who does not produce any time records (or even estimations) for similar tasks for its own attorneys is certainly on dubious ground in making such an argument given that the Court is thereby unable to compare the parties' respective utilization of their resources. *Cooper v. Casey*, 897 F. Supp. 1136, 1139-40 (N.D. Ill. 1995) (Shadur, J.), *rev'd on other grounds*, 97 F.3d 914

---

of the opportunity to work them out as contemplated by the Rules.

(7th Cir. 1996) ("it is unpersuasive for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their time at all"). Thus, before Defendants label Plaintiff's efforts inefficient or unnecessary, the Court might be interested in knowing how much reciprocal time was spent by Defendants' attorneys. *See Latino v. Kaizer*, 864 F. Supp. 835, 838-39 (N.D. Ill. 1994), *rev'd on other grounds*, 58 F.3d 310 (7th Cir. 1995). As Judge Shadur put it in *Kaizer*: "Defense counsel's response was that no time records of any sort are kept by the lawyers in [Chicago's] corporation counsel's office . . . That meant that one frequently reliable source of measuring the reasonableness of time spent by a prevailing party - - that is, the corresponding work done by the losing adversary's lawyers - - was unavailable to this Court. Lacking such comparative information, this Court has been tendered nothing but defendants' *ipse dixit* as a purported basis for reducing plaintiffs' claim." *Id.* *See also Farfaras*, 433 F.3d at 569 ("Defendants' counsel claimed before the district court that its billing records were irrelevant. This position is inconsistent with the letter and spirit of Local Rule 54.3. The rule's purpose is to avoid exactly the type of hypocritical objections presented by the defendants."); *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16570, *12 (N.D. Ill. Sept. 19, 2003) (approving fee petition in part because Law Department lawyers "spent hundreds of hours working on this case" without providing time sheets). Moreover, Defendants failed to tender affidavits or time sheets from other civil rights attorneys to establish that the number of hours requested are unreasonable or excessive.

Turning to their specific objections, Defendants provide this Court with no justification for reducing the specific time entries at issue, other than their own self-serving and completely unsupported "suggestions" that Mogul and Elson should "reasonably be held responsible" for less time spent on each task, suggestions which are worth nothing standing by themselves. In *Mohr v. Chicago School Reform Bd. of Trustees*, 194 F.Supp.2d 786, 789 (N.D. Ill. 2002), Judge Bucklo addressed this type of second-guessing attorney billing judgment in hindsight:

> In general, the losing counsel's testimony that he could have done the winning counsel's work in less time, while relevant, is not worth much standing by itself. If the winning counsel had taken less time, he might not be a position to ask for

12

attorneys' fees as the prevailing party's representative. That does not mean that just any billings by the prevailing party's counsel are ipso facto reasonable, but it does mean that more is required to overcome the inference which is created by the winning counsel's victory that the work billed was reasonable and necessary.

Since Defendants have failed to overcome the inference, created by Plaintiff's victory at trial, that the work billed was reasonable and necessary, their bald objections should be overruled. *See Vardon Golf Co. v. Karsten Mfg. Corp.*, 2003 U.S. Dist. LEXIS 5072, *14 (N.D. Ill. Mar. 31, 2003) ("The Court will not involve itself in the kind of minute micro-managing of attorney's billing practices that Vardon's position would require. Beyond the principle of reasonableness, parties need not justify their billing practices nor their use of time and resources in litigation."); *Kunz v. City of Chicago*, 01 C 1753 (N.D. Ill. August 14, 2008) (Exhibit J) ("There are an inordinate amount of objections to specific billing entries, over a thousand. I examined a large sample of them and I found so few that presented even arguable objections that I stopped reading them. I found none that I would sustain.").

Moreover, in putting forth their arguments that Plaintiff's counsel's hours are excessive with respect to specific tasks completed, Defendants fails to address other forms of work that was completed that was necessary to properly litigate the case. Specifically, Defense counsel failed to address hours Plaintiff's counsel expended on the following tasks:

- attending and traveling to numerous court dates;[11]
- correspondence to Defense counsel including numerous letters pursuant to Local Rule 37.2 to discover additional discovery, the letter to settle, and other items;
- phone calls with Defense counsel;
- phone calls, correspondence and meetings with the Plaintiff with respect to all aspects of the case, including the progression of the litigation, as well as the circumstances of the incident, his injuries, the on-going medical treatment he was receiving, and his availability to participate in the case;
- phone calls and meetings with lay witnesses, including Umberto Davi, Luis Delgado, paramedic Mulhern, and James Haddod;
- meetings, phone calls and correspondence with the three medical treaters, Dr. Ayoade Akere, Dr. Adam Bennett, Dr. Scott Spencer;
- numerous conversations and meetings with co-counsel Ed Mogul [Plaintiff doesn't seek to be compensated for his time];

---

[11]As a matter of law, travel time is compensable at full rates since it is time which could have been spent charging other clients for services rendered. *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984).

- drafting Plaintiff's Request to Admit and responding to Defendants' Requests to Admit.

In fact, Defense counsel only addresses 150 of the 298 time entries contained within Mogul and Elson's time records.

Finally, in making the argument that Plaintiff's counsel's hours are excessive, Defense counsel misrepresents the hours that were in fact expended on each piece of work. When looking at each of the entries, Defense counsel improperly inflates the hours that were expended on the task enumerated in the time sheets. Specifically, he continually cites the same sets of hours over and over again to exaggerate the hours actually expended. Moreover, Defense counsel fails to articulate the amount of work required to effectively litigate this case. Thus, Defense counsel's arguments with respect to the work completed by Plaintiff's counsel are both incomplete and unreliable and therefore should be rejected in their entirety.

In light of space limitations with respect to this brief, ignored by Defendants when filing their oversize brief without leave of the Court, Plaintiff's counsel will respond to some, but not all, of the specific arguments lodged by Defense counsel to demonstrate that these arguments are not fair representations of the work completed with respect to this case.

A.      **Criminal Defense File**

Defense counsel misrepresents the time Plaintiff's counsel spent on reviewing the "criminal defense file" from the underlying criminal case. Rather, Plaintiff's counsel was involved in numerous important activities that related to the use of materials from the criminal file that cannot be characterized solely as acts pertaining to the "review" of the criminal file. First and foremost, Plaintiff's counsel had to organize and review the criminal file to determine whether she was going to accept Plaintiff's case. Contrary to Defense counsel's speculation, the criminal defense file was neither slim nor sparse in materials. In addition to the three different criminal complaints, two use of force reports, an incident report, and a 109 page transcript documenting the testimony of five witnesses mentioned in Defendants' response, the file also contained:

- over 50 photographs of both Plaintiff's injuries and the shoe store;
- Mr. Delgado's motion to dismiss the case and response from the State Attorney's office;

14

- Mr. Delgado's filed appellate brief seeking a supervisory order from the Illinois Supreme Court to dismiss the case;
- criminal defense counsel's work product;
- the restraining order in Delgado Sr.'s divorce case;
- multiple inventory sheets completed by the Defendant Officers;
- the State's answer to discovery in the criminal case;
- sworn affidavits of Plaintiff and Mr. Umberto Davi with respect to the incident;
- several criminal court subpoenas;
- parts of Plaintiff's medical records and bills from St. Anthony's Hospital; and
- a copy of Plaintiff's I-bond.

Therefore, in light of the materials contained in this rather voluminous file, it is fair to assume that Plaintiff's counsel would have to take some time to review the file and digest its contents initially when deciding to take the case and later when drafting the complaint (as the Plaintiff testified in the criminal proceedings, see entries 3/1/06, 6/9/06, 6/11/06) and later when assembling evidence and arguments to win the case. Specifically, Plaintiff's counsel's abstraction of the criminal testimony of the Defendant Officers was necessary to draft Plaintiff's Request to Admit to the Defendants (see entries 5/23-24/07), as well as Plaintiff's counsel uncovering and mastery of the different and often contradictory statements made by the Defendant Officers in the criminal complaints, the incident report, the use of force reports, the criminal trial testimony and later in their depositions, in order to impeach the Defendant Officers and undermine their credibility and version of events at trial.

## B.    Drafting the Complaint

With respect to the two entries related to drafting the complaint, it is clear that on 6/11/06 and 7/6/06, Plaintiff's counsel did not spend a total of five hours drafting the complaint. Rather, in addition to drafting the complaint, Plaintiff's counsel conducted legal research to ensure the validity of legal claims contained therein,[12] drafted a letter to send the complaint to Plaintiff, and completed the necessary documents to file the complaint. *See, e.g., Mohr v. Chi. Sch. Reform Bd. of Trs.*, 194 F. Supp. 2d 786, 788 (N.D. Ill. 2002) ("hours doing further investigation,

---

[12] In submitting hours for Defense counsel's review, Plaintiff's counsel is not required to disclose information that may contain work product, specifically the research that was completed. With respect to billing a client, it would have no significance to him or her as to what specific cases were reviewed. However, if this Court would like further information to justify time spent on research, Plaintiff's counsel is more than willing to provide the Court with more specific information as to the legal issues and cases reviewed.

research and preparation of the complaint . . . is a good idea in view of Fed. R. Civ. P. 11.").

**C.      Plaintiff's 26(a)(1) Disclosures**

Contrary to Defense counsel's representation, Mogul did not expend anywhere close to eight hours preparing Plaintiff's 26(a)(1) disclosures on the listed dates; in fact the time expended on 10/9/06 included the completion of a total of seven different tasks for a total of four hours, not all of which was expended on the 26(a)(1) disclosures. When reviewing these specific entries, it is clear that Plaintiff's counsel was cost efficient in completing several necessary tasks, including the completion of Plaintiff's 26(a)(1) disclosures, which in light of the voluminous materials contained in the criminal file, was not a simple job.

**D.      Reviewing and Responding to Defendants' Motion to Dismiss**

While Defense counsel bemoans the time spent by Plaintiff's counsel reviewing, researching and responding to Defendants' motion to dismiss, he fails to inform the Court that Plaintiff's counsel defeated the Defendants' motion seeking to dismiss Cook County from the case. (See Dkt. # 31). Therefore, contrary to Defendants' representation, Defendants memorandum of law did not direct Plaintiff's counsel to the relevant law and the motion did not solely relate to a "simple and narrow issue." Rather, Plaintiff's counsel conducted necessary research to properly argue that the County should not be dismissed from the case. Moreover, Plaintiff conceded that the Sheriff's Deputies were not County employees in the response and therefore did not expend unnecessary time in attempting to litigate this issue. (See Dkt. # 28). Thus, in light of the fact that Plaintiff's counsel prevailed with respect to this motion, Plaintiff's counsel is entitled to be compensated for the time spent responding to it.

**E.      Time Spent With Manuel Delgado Answering Interrogatories, and Preparing Him For His Deposition and Trial Testimony**

Defense counsel continually reasserts that this case did not require the time and hours expended because, in his unsupported estimation, the case involved an incident involving "30 minutes at best." This was apparently Defense counsel's narrow view of the case. However, in light of the years of medical treatment Plaintiff sustained as result of the injuries caused by the Defendant Officers, Plaintiff's counsel needed to spend additional time with the Plaintiff not only to review the actual incident itself, but to review the treatment he received from seven different

16

medical treaters, including the treatment he received over the span of six days at St. Anthony's Hospital, the physical therapy at Atheltico (which included 14 different visits), the visit to Dr. Wilkin's office, the chiropractic treatments from Dr. Spencer (which included 17 different visits); the visit to Dr. Vucicevic, and the visits to Dr. Bennett and Northwestern Hospital (which included numerous visits, MRIs, and physical therapy). (See Plaintiff's Pre-trial exhibits, labeled P5, P7, P16-17). Obviously, time preparing one's client is crucial to a successful result and is contingent on many factors unique to each lawyer-client relationship, particularly mutual trust and confidence. Here, the time Plaintiff's counsel spent with the Plaintiff was clearly reasonable and necessary to the success of the case.

    **F.**    **Reviewing Defendants' Discovery, Conducting Defendants' Depositions, Abstracting and Preparing Cross-Examinations of the Defendant Officers for Trial**

Again, Defendants misrepresent the actual hours Plaintiff's counsel expended reviewing Defendants' discovery, as well as preparing for and conducting the Defendant Officers' depositions. First, Defendants misrepresent the number of documents they turned over in discovery in order to undermine the number of hours Plaintiff's counsel spent reviewing these documents, preparing for the Defendant's depositions, and subsequently preparing the exhibits for the pretrial order. Contrary to Defense counsel's representation that Defendants only turned over 76 pages in discovery (see Defs' Memo, p. 13), there were over 2,500 documents turned over, including Defendant Officers' personnel files, civilian complaints and investigations, and prior lawsuits. Specifically,

- Defendant Mak had 35 civilian complaints filed against him resulting in over 409 pages included within his personnel file and disciplinary records; (See Exhibit A, Joey Mogul's Affidavit, ¶14);
- Defendant Lowery had 17 civilian complaints filed against him, therefore his personnel file, complaint investigations and prior arrest criminal file contained a total of 563 pages;[13] (Id.);
- Defendant Fields had 9 civilian complaints filed against him, as well as another

---

[13] Defense counsel also fails to account for time Plaintiff's counsel spent both reading through the Defendant Officers' personnel files to determine relevant civilian complaint files that were missing from the files (including those that had to deal with allegations of excessive force or sustained complaints) and writing defense counsel pursuant to Local Rule 37.2 to obtain said files. See Group Exhibits K and L, letters dated March 14, 2007, March 21, 2007, April 3, 2007, and April 14, 2007.

civil rights lawsuit alleging he engaged in acts of excessive force and false arrest, resulting in a total of 1,690 pages of discovery. (Id.).

Thousands of documents do not constitute a "brevity" of documents requiring little time to review, digest and master in order to effectively litigate this case. Thus, the time Plaintiff's counsel spent reviewing these files and preparing for these depositions was absolutely necessary and well spent. Moreover, Plaintiff's counsel notes that review of these materials, specifically Defendant Mak's personnel file, led to his impeachment at trial when he falsely testified that he was not a martial arts instructor prior to becoming a Deputy Sheriff, despite his prior occupational history form submitted to the Sheriff's Office that indicated he previously held such employment.

Further, the time Plaintiff's counsel included on her 1/18/07, 1/23/07 and 1/31/08 entries included numerous hours well spent deposing the Defendant Officers. Defendants Mak and Field's deposition each took approximately seven hours to complete, inclusive of the time taken for breaks to change the videotapes and other breaks taken by the witnesses and counsel. Defendant Lowery's deposition took a total of approximately five hours. Defense counsel's complaints that Plaintiff's counsel took too much time completing these depositions because of the alleged "factual simplicity of the incident" must be rejected. In this case, the Defendant Officers' testimony not only contradicted that of their fellow Defendants, but continually, changed and evolved over the course of the case, from the time the initial charges were filed and the reports were drafted, to their testimony at the criminal trial and eventually their testimony at court. Thus, the Defendant Officers testimony which continually shifted and morphed to match the evidence, required Plaintiff's counsel to take detailed, time consuming depositions in order to lock down each of their testimony for subsequent impeachment and confrontation at trial.

Finally, the time spent by Mogul in abstracting the Defendant Officers' depositions and preparing the Defendant Officer's examinations was both reasonable and well spent. The biggest obstacle Plaintiff's counsel had to overcome was undermining and challenging the credibility and veracity of the three Defendant Officers because their testimony refuted Plaintiff's testimony that he was subjected to unreasonable and unnecessary force. Plaintiff's counsel's knowledge of the Defendant Officers' deposition testimony, was therefore, crucial to challenging Defendant

18

Officers' version of events, exposing the contradictions contained in their own testimony, as well as the contradictions in each other's testimony. Such preparation was instrumental at trial as each of the Defendant Officers' were impeached on numerous occasions by their prior deposition testimony.

**G.   Reviewing and Abstracting Medical Records, Preparing Treating Doctors and Experts to Testify, and Preparation and Deposition of Louis Draganich**

Defense counsel again complains that the time Plaintiff's counsel spent in reviewing, understanding, digesting and preparing the medical evidence in this case was excessive and unnecessary. Plaintiff's counsel, however, needed time to understand and analyze the numerous injuries sustained by the Plaintiff and the medical treatment he needed, which in turn required additional time in light of the medical terminology used to describe both. Moreover, the time was well spent considering that Defense counsel not only challenged the extent of Plaintiff's injuries, but also whether the medical treatment Plaintiff received was necessary. While Defense counsel mocks the "stick figure diagram" shown to the jury from St. Anthony's Hospital to argue the injuries were not complicated, Plaintiff's counsel was required to go through several pages of Dr. Akere's medical records to demonstrate the nature and extent of Plaintiff's injuries, as well as to document and justify Plaintiff's hospitalization for six days was in fact necessary and not a result of his subjective complaints of pain. It is clear by the jury's verdict that the time spent by Plaintiff's counsel on the medical records and testimony which gave rise to the presentation of this testimony at trial was reasonable in light of the jury's six-figure damage award to compensate these injuries. Moreover, medical evidence developed and presented by Plaintiff's counsel sufficiently supported the damage award so that the Defendants did not attack the damage award in a post-trial motion or by filing a notice of appeal.

Further, the Plaintiff's counsel's continual review and understanding of these medical records, along with counsel's research and understanding of the medical science, contributed to Plaintiff's counsel's effective examination of Defendants' expert Dr. Draganich at his deposition. Specifically, Dr. Draganich opined that Plaintiff's biceps tendon did not fully rupture in the course of this incident, and that the full rupture occurred some time later at the hospital based on his review of the records and his belief that the injury was first noticed on April 11, 2006, the day

19

of Plaintiff's release. According to Dr. Draganich's understanding of the science and medical literature, such an injury would immediately reveal itself upon rupture. Dr. Draganich, however, was forced to retract these opinions after Plaintiff's counsel confronted him with medical literature that indicated this type of injury may take time to physically manifest and with several notations in St. Anthony's medical records that demonstrated the injury was first documented two days after incident. (See Exhibit M, Excerpts from Draganich Deposition, pp. 152-55).

Further, Plaintiff's counsel is entitled to be compensated for the hours expended researching the science with respect to the causation of biceps tendon rupture and the time spent undermining the factual predicate Dr. Draganich relied on when producing his opinions. Again, Dr. Draganich was not a reliable source with respect to the medical science of biceps tendon injuries. Moreover, Dr. Draganich solely relied on the deposition testimony of Defendant Mak when opining that Plaintiff's injury was caused by his own physical resistance. Plaintiff's counsel's review of Defendant Mak's own contradictory statements as well as the contradictions contained in the testimony of the two other Defendant Officers served to undermine the credibility of Dr. Draganich's opinions and testimony. Therefore, Plaintiff's counsel review of the medical records, medical literature, and Defendant Officers' testimony was absolutely essential to undermining Dr. Draganich's opinions, and consequently compelling the Defendants to forego calling him as a witness at trial.

### H.    Work Completed on the Pre-Trial Order and Jury Instructions

Defense counsel grossly inflates the actual hours Plaintiff's counsel expended on the final pre-trial order and jury instructions and underestimates the amount of time required to complete these tasks. Defendants ignore the laboring-oar duty that this Court's standing order imposes on every plaintiff's counsel for the initial preparation of the pre-trial order, which sets out the game plan for trial. Following that initial time expenditure, the parties went through no less than six drafts of the pre-trial order, attempting to address each others' objections and make less work for the Court. Had Plaintiff's counsel spent less time on this task as Defendants suggest, their presentation at trial would have been less effective and their success less likely.

With respect to Plaintiff's proposed jury instructions, Defendants objected to virtually all of them, including the pattern jury instructions, requiring both parties to respond and reply

numerous times in writing to each others specific objections. (See email attached as Exhibit N).
What made this task even more time consuming was Defendants' decision to submit their own
complete set of proposed instructions instead of simply working from the draft that Plaintiff's
counsel created, which forced Plaintiff's counsel to exhaustively compare and analyze both sets
of instructions to determine what was agreed to and what was in dispute. *(See id)*. In sum,
Defendants offer no basis other than sheer supposition that these tasks should have been
completed in the time they suggest. Plaintiff's counsel were well justified in expending the time
and effort that they reasonably viewed as necessary in order for their client to prevail.

### I.      Work Expended on Pre-Trial and Trial Matters

Finally, Defendants attack both the manner Plaintiff's counsel used to bill and the number
of hours sought by Plaintiff's counsel with respect to the work completed prior to and during the
trial. Clients and courts recognize that trial counsel is otherwise occupied spending enormous
amounts of time both preparing for and presenting the case at trial. Therefore, the hours spent
and the manner in which they are reflected in Plaintiff's time sheets are more than reasonable
with respect to the pre-trial and trial preparation. *See Spina v. Forest Pres. Dist.*, 2002 U.S. Dist.
LEXIS 16005, *20-21 (N.D. Ill. July 30, 2002) (Keys, MJ.) ("while block billing 15 hours a day
typically might be deemed too vague and excessive to warrant payment, such entries are entirely
appropriate when devoted to trial preparation just before and during trial").

Nevertheless, Plaintiff's counsel's hours would be reasonable even if they did spend more
time on particular tasks during this litigation than Defense counsel or what Defense counsel
deems reasonable. Both sides attend the same depositions/court proceedings (suggesting at least
an equality of time) but the plaintiff bears the burden of proof, and must work that much harder
to discover facts that are largely in control of the defense. *See Spina,* 2002 U.S. Dist. LEXIS
16005, **19-20 ("The Court finds it entirely reasonable that [plaintiff's counsel] would expend
more hours prosecuting this case than defense counsel spent defending it; particularly in light of
[plainitff's] level of representation and the outcome she achieved in this case"). The point is,
Plaintiff's counsel are free to prepare for depositions, conduct discovery, and ready themselves
for trial in whatever manner they and their client believe is appropriate, and the excellent result
achieved in this case demonstrates that their time expended was more than reasonable. It simply

does not make sense for Plaintiff's counsel to deliberately waste resources and duplicate their efforts in order to run up the bill in a fee shifting case such as this, because the risk is too great that they could end up receiving nothing and be forced to bear their own costs. Perhaps the real question is not whether Plaintiff's counsel spent too much time on particular tasks, but whether Defense counsel failed to spend enough.

Plaintiffs' counsel are entitled to be paid for every single hour sought in their billing records. These billing records clearly are sufficient as are sufficient to enable the Court to determine that it was necessary and cost efficient to expend the hours Plaintiff's counsel billed for.

### Conclusion

For the reasons stated above, Plaintiff Delgado respectfully requests that the Court grant counsel's §1988 Petition, awarding attorneys' fees and costs in the requested amounts.

Respectfully Submitted,

Dated: September 8, 2008

/s/ Joey L. Mogul and Ben h. Elson
JOEY L. MOGUL
BEN H. ELSON
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622
773/235-0070

Attorneys for Plaintiff Manuel Delgado