**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MANUEL DELGADO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 06 C 3757 |
| | ) |
| COOK COUNTY DEPUTY SHERIFFS | ) |
| WILLIE MAK #4255, CLAVIN FIELDS | ) |
| #3444, MARTIN LOWERY #1825, | ) |
| COOK COUNTY SHERIFF THOMAS | ) |
| DART, and the COUNTY OF COOK, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's petition for attorneys' fees and costs [122], Plaintiff's supplement to his petition for attorneys' fees and costs [128], Defendants' memorandum in opposition [134], and Plaintiff's reply brief [142]. For the reasons stated below, Plaintiff's petition [122] is granted.

**I.    Background**

On July 12, 2006, Plaintiff Manuel Delgado filed this lawsuit against three Cook County Deputy Sheriffs, the Sheriff himself, and the County of Cook, alleging violations of his civil rights under 42 U.S.C. § 1983, as well as various related state law claims. The parties discussed settlement early in the case, but were too far apart in their positions to reach accord. At that time, Plaintiff demanded $225,000, inclusive of fees and costs, and Defendants offered $30,000. After extensive discovery, including depositions of fact witnesses, medical personnel, treating physicians, and expert witnesses, Defendants made an offer of judgment of $50,000 pursuant to Fed. R. Civ. P. 68. Plaintiff declined the offer of judgment and the case went to trial. After five

days of trial, the jury returned a verdict in Plaintiff's favor on two of five counts and awarded compensatory damages of $125,000. Specifically, the jury found in Plaintiff's favor on Plaintiff's claims for excessive force and intentional infliction of emotional distress and in Defendants' favor on Plaintiff's claims for false arrest, malicious prosecution, and conspiracy.

The parties were unable to agree on the amount of attorneys' fees to which Plaintiff is entitled as a prevailing party in a Section 1983 action. Thus, Plaintiff filed a petition for fees and costs followed by a supplement to that petition. In that supplemental petition, Plaintiff requests $226,841.08 in attorneys' fees, $18,124.27 in costs (through May 31, 2008), and requests to supplement his request as to compensable fees and costs incurred after May 31. Defendants do not contest the costs, nor do they contest the hourly rates submitted by counsel for Plaintiff. Defendants challenge the supplemental fee petition in the following respects:

- Defendants request that the Court eliminate any fees for two more senior lawyers with whom Plaintiff's trial lawyers consulted, principally during the trial itself;

- Defendants contend that the Court should impose an across-the-board reduction of 60% of the fees requested because Plaintiff prevailed on only two of the five claims that went to verdict;

- Defendants argue that the Court should make substantial reductions of Plaintiff's request for compensation for specific entries/tasks that Defendants contend are improperly documented "block billing" and/or excessive; and

- Defendants submit that there should be no award of attorneys' fees against Sheriff Dart or the County itself.

## II. Analysis

### A. General standards

In order to entice competent attorneys to prosecute civil rights cases, Congress enacted 42 U.S.C. § 1988, pursuant to which a "prevailing party" in a Section 1983 action is entitled to "reasonable" attorneys' fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A civil rights

plaintiff is considered to be a "prevailing party" if he or she succeeds on "any significant issue in the litigation." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989). As a result of the substantial jury verdict in this case, there can be no dispute that Plaintiff must be deemed a "prevailing party" who is entitled to an award of "reasonable" attorneys' fees.

In deciding the specific amount that is reasonable in the circumstances, the Supreme Court has directed district courts to consider as a "starting point" (or "lodestar") the number of hours expended in the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Court has stressed that the "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained" by the prevailing party. *Id*. at 436. As both parties here acknowledge, courts frequently attempt to measure success by viewing three factors: (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation. See, *e.g.*, *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

The Supreme Court expressly has stated that when litigation of a Section 1983 case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. As the Court further explained, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. Both the Supreme Court and the Seventh Circuit have stressed that a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals summarized, "*Hensley* makes clear that when claims are interrelated, as is often the case

3

in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

Here, all of Plaintiff's claims had their genesis in a relatively brief interaction between the individual Defendant officers and Plaintiff in Plaintiff's shoe store. That interaction spawned two years of litigation and involved participants, witnesses, a host of medical personnel including paramedics, doctors, nurses, and physical therapists, as well as expert witnesses. Even the malicious prosecution claim resulted from the decision to bring to trial the charges brought against Plaintiff following his interaction with the Defendant officers at the shoe store. Accordingly, this case is an exemplar of the cases in which "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff." *Id.*; see also *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (explaining that the court should focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation").

Finally, the mere fact that the amount yielded by computing the "lodestar" exceeds the amount of the judgment does not suggest that the prevailing party has made an unreasonable fee request. To the contrary, recognizing the importance of vindicating constitutional rights through the Section 1983 vehicle created by Congress, it is not unusual for district courts to grant, and courts of appeals to affirm, attorneys' fees that exceed (even substantially) the amount of the judgment when doing so is reasonable in the circumstances. See, *e.g.*, *Robinson v. City of*

*Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (affirming $507,000 fee award on $275,000 verdict); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000) (affirming $391,000 fee award on $137,000 verdict).

Turning first to the three factors set forth by the Seventh Circuit in *Connolly*, 177 F.3d at 597, "the difference between the actual judgment and the recovery sought" indicates that Plaintiff achieved a high degree of success in this litigation. Plaintiff was willing to settle the case for $225,000, inclusive of attorneys' fees, which likely would have netted Plaintiff an amount fairly close to the $125,000 that the jury ultimately awarded. By contrast, the jury clearly valued the case much higher than Defendants did, for the damages award was two-and-a-half times the amount of the highest offer made by Defendants to settle the case. The legal issues on which Plaintiff prevailed and the public interests at stake in this litigation both must be considered significant as well; in the Supreme Court's words, "the damages a plaintiff recovers contribute significantly to the deterrence of civil rights violations in the future," and particularly "in the area of individual police misconduct, where injunctive relief is generally unavailable." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).

After consideration of the pertinent factors, the Court finds that Plaintiff achieved a considerable degree of success – a six-figure verdict – after a hotly contested five-day trial that was well litigated on both sides. Because that verdict constitutes an "excellent result" for Plaintiff, the Court concludes that his attorneys "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. The Court further concludes that although the degree of success achieved for Plaintiff was "excellent," it was not "exceptional," and therefore Plaintiff's counsel are entitled only to "all hours reasonably expended on the litigation," and not "an enhanced

award." *Id*. The remaining question – on which the parties have devoted the bulk of the briefing on the fee petition – is what hours were "reasonably expended" in this case?

### B.  Defendants' Objections

#### 1.  Fee award to Stainthorp and Taylor

The Court concludes that Defendants' request that the Court eliminate any fees for two more senior lawyers, Mr. Stainthorp and Mr. Taylor, with whom Plaintiff's principal trial lawyers consulted, principally during the trial itself, is not well taken for several reasons. To begin with, the number of hours sought for those lawyers' participation is minimal. In addition, the time entries for those lawyers do not reflect duplicative tasks or tasks that are inappropriate for their experience level (*e.g.*, abstracting depositions). Rather, the entries show that the trial lawyers consulted with their more senior colleagues at critical junctures of the case and principally on matters of strategy. Consultation of that kind is highly appropriate, efficient, and is exactly what lawyers in firms of all sizes do to best serve their clients. See, *e.g. Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987) ("The use of more than one lawyer is common in legal practice. Consultation among lawyers insures that they do not overlook significant facts or injuries.") (Easterbrook, C.J., sitting by designation). Because the Court finds that the number of hours, the hourly rates, and the matters as to which Mr. Stainthorp and Mr. Taylor were engaged all were appropriate, the Court rejects Defendants' objections as to the time entries by those lawyers.

#### 2.  Across the Board Reduction of 60%

The Court next considers Defendants' request for an "across the board" reduction of 60% from the fee request on the ground that Plaintiff prevailed on only two of the five claims that were presented for the jury's consideration. As Plaintiff points out, courts from the Supreme

6

Court on down the judicial hierarchy generally have disapproved of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 435 n.11. Moreover, as explained above, a mathematical approach is particularly unsuitable where, as here, the Plaintiff's claims are largely interrelated, both legally and factually. See *id*. at 435; *Bryant*, 200 F.3d at 1101; *Ustrak*, 851 F.2d at 988; see also *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (discouraging "meat-axe * * * [p]ercentage reductions * * * to make adjustments for partial success"). For these reasons, the Court rejects Defendants' arguments for a proportional 60% reduction in the requested fees.

### 3. Objections to Specific Tasks or Entries

#### A. Waiver based on lack of compliance with Local Rule 54.3

In their memorandum in opposition to Plaintiff's fee request, Defendants also raise a number of objections to specific tasks or fee entries. Plaintiff initially contends that Defendants waived any such objections by failing to provide their specific objections prior to the filing of the parties' Joint Fee Statement required by Local Rule 54.3. Plaintiff is correct that Local Rule 54.3(d) contemplates that parties will state their objections with clarity and particularity to facilitate resolution of fee disputes, where possible, without court intervention. See, *e.g.*, *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) (noting that the party opposing a fee petition must "state objections with particularity and clarity"). Defendants' compliance with the Local Rule's directives concerning the Joint Statement was lacking in some respects, and was not as specific as the example provided in the Appendix to Local Rule 54.3. However, in the briefing on the fee petition, both parties have had ample opportunity to state and elaborate on their positions and Plaintiff, as the moving party, had the last word. Accordingly, the Court concludes that any deficiency in Defendants' articulation of their position in the Joint

7

Statement has not caused prejudice to Plaintiff. In addition, the Court has an independent obligation to ensure the reasonableness of the fees requested and to give a clear and concise explanation for its final fee award.

### B. Block billing and specific entries

Defendants object to the lack of detail in the time entries submitted by Plaintiff's counsel, characterizing those entries as "block billing" and complaining that entries made in such fashion render any assessment of the reasonableness of the time spent on specific tasks extremely difficult, if not impossible. The Seventh Circuit has stated that "although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust Co.*, 433 F.3d 558, 569 (7th Cir. 2006). The standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market – that is, "the level of detail paying clients find satisfactory." *Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 16570, at *11 (N.D. Ill. Sept. 19, 2003). In addition, the time entries must be sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.

Here, while the time entries of Plaintiff's counsel are not as detailed as many that the Court has seen (or, indeed, submitted to clients in private practice), they are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis. As Judge Zagel has written, in words that apply equally here, "there is no binding standard on how hours should be described and how great the detail should be. If, on the face of it, the hours seem out of line, there is some weight to a claim that descriptions are too sparse, but

8

the hours are not out of line here." *Kunz v. City of Chicago*, No. 01 C 1753, Memorandum Opinion and Order, at 3 (N.D. Ill. Aug. 14, 2008).

To be sure, analysis of specific entries, by Defendants and the Court, would have been easier had Plaintiffs provided a time entry for each task – a practice that some, though by no means all, paying clients require. But any ultimate determination as to the reasonableness of Plaintiff's fee request based on the amount of time spent on specific tasks (*e.g.*, preparing for an expert deposition or making objections to proposed jury instructions) also would have been complicated by the absence of any specific time entries by Defendants' counsel in this case. As Judge Shadur has written, "it is unpersuasive for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their time at all." *Cooper v. Casey*, 897 F. Supp. 1136, 1139-40 (N.D. Ill. 1995), *rev'd on other grounds*, 97 F.3d 914 (7th Cir. 1996); see also *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) (rejecting excessiveness challenges where, *inter alia*, "[t]he City has offered no objective standard, no 'reasonable' number of hours to spend on a given activity, with which to compare" to Plaintiff's fee request).

In view of the combination of the block billing employed by Plaintiff's counsel and the absence of any time keeping whatsoever by Defendants' counsel, the Court concludes that any attempt to assess the reasonableness by reviewing specific time entries for specific tasks, one-by-one, would not be productive. To begin with, many of Defendants' objections fall within the category of what one judge in this District has described as "'nit-picking from the outside and in hindsight [which] provides no basis for disallowance' of fees." *Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *4 (N.D. Ill.

9

Mar. 18, 2008) (citation omitted). In that regard, Defendants ask the Court to shave off a few hours as to most of the major categories of time entries. For example, Defendants submit that Plaintiff's lawyers should have spent eight hours reviewing Plaintiff's criminal defense file, instead of the eleven hours for which they request their fees. Similarly, Defendants suggest that they should be held responsible for only four out of the five hours that Plaintiff claims for drafting the complaint. The Court has reviewed each of Defendants' challenges and rejects them all because the time devoted to each task according to Plaintiff's counsel's billing records "was within the bounds of reasonableness." *Id*. As the Seventh Circuit has recognized, "[l]awyers do not come from cookie cutters. Some are fast studies and others require extra preparation." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Moreover, to the extent that the hours that counsel for Plaintiff spent on various litigation tasks may have exceeded the hours that counsel for Defendants devoted to the same tasks – a matter as to which the Court can only speculate because Defendants' counsel do not maintain time records – it is important to bear in mind that Plaintiff bore the burden of proof at trial. For that reason, many courts have remarked that "'[u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant.'" *Trustees of the Chicago Plastering Institute*, 2008 WL 728897, at *4 (quoting *CBS Broadcasting, Inc. v. Browning*, 2007 WL 2850527, at *8 (S.D. Fla. Sept. 21, 2007)).

In any event, even without flyspecking each billing entry, the Court still is capable of reviewing the ample documentation provided by the parties to determine the appropriate level of compensation for "all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; see also *Markon v. Board of Education*, 525 F. Supp. 2d 980, 984 (N.D. Ill. 2007) ("I do not find the entries defendants attack as 'lumping' prevent a court from determining whether the time was

reasonably spent"). Rather than attempting to analyze each entry or group of related entries separately, the Court has divided the fee request of Plaintiff's principal lawyer, Ms. Mogul, into various time periods in the litigation. See *O'Sullivan*, 484 F. Supp. 2d at 843-847 (using a similar mode of analysis). Ms. Mogul seeks a fee award for approximately 10 hours during the investigation period of the case, 190 hours during the discovery period, 150 hours during the pre-trial phase, 160 hours during the final trial preparation and trial phase, and 20 hours (to date) in the post-trial phase. Her junior trial partner, Mr. Elson, seeks compensation for fewer hours, performing primarily (though not exclusively) support tasks.[1] As explained below, the Court finds that the hours expended at each stage of the case by Plaintiffs' principal lawyers were reasonable in light of the issues raised, their complexity, the lawyers' experience levels, the level of resistance from Defendants, the burden of proof that Plaintiff bore at trial, and the risk that inadequate preparation at any stage could have led to no recovery for Plaintiff (and, correspondingly, no attorneys' fees). See *Mohr v. Chicago School Reform Board of Trustees*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002) ("If the winning counsel had taken less time, he might not be in a position to ask for attorneys' fees as the prevailing party's representative").

While the Court cannot perform a comparable analysis to determine the amount of time spent on the case by lead defense counsel, Mr. DiBenedetto, his trial partner, Mr. Satter, or any supervisory lawyers in the State's Attorney's Office with whom the principal lawyers may have consulted, the Court observes that the relative effort and output of the parties in the time after this case was transferred to this Court's docket appeared to be comparable, both qualitatively and quantitatively. This case was well litigated on both sides; both parties participated fully in the

---

[1] As noted above, Messrs. Stainthorp and Taylor seek compensation for relatively few hours spent in a consulting capacity, all of which appear to be appropriately documented and justifiable in the circumstances of the case.

11

preparation of the pre-trial order, the jury instructions (including objections), and the suggested voir dire questions. Both parties submitted detailed and helpful trial briefs. And both sides obviously spent a good deal of time preparing their witnesses, their cross-examinations, their opening statements, and their closing arguments. Both sides also provided substantial briefing on the many contested motions in limine, some of which were resolved in Plaintiff's favor and others of which were resolved in Defendants' favor.[2] In short, the trial was a match of well prepared lawyers of approximately the same experience level, and there is no basis for concluding that Plaintiff's counsel was any less (or more) efficient than Defendants' counsel in litigating the case.

Finally, the Court reiterates that if Defendants had been able to demonstrate that they performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain entries from the lodestar. But because no such comparison is possible in light of defense counsel's billing practices, the Court must determine "reasonableness" on the basis of its impressions of the quality and quantity of the work of counsel for each side and its review of the time entries submitted by Plaintiff's counsel. Under that analysis, Plaintiff's request for $226,841.08 in attorneys' fees is reasonable and will be granted.

### C. Objections to awards against Sheriff and/or County

Finally, Defendants have objected to the imposition of any attorneys' fee award against the Sheriff and/or Cook County and an award of costs against Cook County. In support of their position, Defendants note that the indemnification obligation imposed on the Sheriff and the

---

[2] The Court further observes that both sides, as a matter of trial strategy, retained experts, which added a measure of complexity to the case. In addition, the work undertaken by Plaintiff's counsel to challenge the theories of defense expert, Dr. Draganich, paid off, as that expert retracted some of his previously offered opinions and ultimately was not offered at trial, possibly because of the success of Plaintiff's counsel in discrediting those opinions.

County pursuant to 745 ILCS 10/9-102 does not extent to attorneys' fees, citing *Yang v. City of Chicago*, 195 Ill. 2d 96 (2001). According to Defendants, under Illinois law, the Sheriff is *authorized* in his discretion to pay attorneys' fees and costs, but is not *required* to do so. Defendants further contend that Cook County should not be liable for attorneys' fees or costs on the basis of Judge Manning's ruling that the County remained in the case for indemnification purposes only, and that the indemnification obligation extends only to the $125,000 compensatory damages verdict.

In view of the several pages of argument that Defendants devoted to the arguments concerning the limitations on the liability of the Sheriff and the County for attorneys' fees and costs, the Court views the absence of any argument in opposition by Plaintiff in his reply brief as acquiescence in Defendants' positions. Accordingly, the award of attorneys' fees in this case will be imposed against the three individual Defendants only, and the award of costs will be imposed only against those three individual Defendants and the Sheriff.

\* \* \* \* \*

In sum, because Plaintiff won a substantial verdict on two counts in this civil rights action, Plaintiff clearly qualifies as a prevailing party entitled to attorneys' fees under Section 1988. Because Defendants do not contest the costs submitted by Plaintiff or the hourly rates charged by Plaintiff's counsel, the Court's analysis has focused on the appropriate level of compensation for "all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. In consideration of the applicable factors, the Court concludes that Plaintiff obtained an "excellent" result and "should recover a fully compensatory fee." *Id*. In other words, Plaintiff is entitled to the traditional lodestar – reasonable hours multiplied by counsel's respective hourly rates. Finally, as explained in detail above, the Court finds that all of the hours submitted for

each of Plaintiff's lawyers were adequately documented and "within the bounds of reasonableness" (*Trustees of the Chicago Plastering Institute*, 2008 WL 728897, at *4) in view of the nature of the case, the apparent effort of the lawyers for the other side, and the result obtained.

### III. Conclusion

For the reasons stated above, the Court grants Plaintiff's petition [122] for $226,841.08 in attorneys' fees through May 30, 2008 and $18,124.27 in costs. In addition, given that "[a]mple case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition" (*Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897, at *6), Plaintiff is given fourteen days from the date of this opinion to submit a request for compensation for hours spent litigating the fee petition since May 30. Defendants are given 14 days from the date of Plaintiff's supplemental filing, if any, to file any objections to Plaintiff's supplemental filing. Finally, as noted above, the award of attorneys' fees in this case is imposed against the three individual Defendants only, and the award of costs is imposed only against those three individual Defendants and the Sheriff.

Dated: January 29, 2009 _____
Robert M. Dow, Jr.
United States District Judge

14